# Pennsylvania Railroad Company *v.* Pennsylvania Company for Insurance on Lives and Granting Annuities, Appellant.

*Railroads—Corporations—Stock—Voting stock—Merger.*

Where a railroad company deposits stock of another railroad company with a trustee under an agreement in writing, reserving "all the rights, powers and privileges, belonging or incident to the ownership of the stock," including the right to vote the stock, the railroad company has a right to exact a proxy from the trustee so as to vote the stock for the merger of the railroad company whose stock is deposited, with another company, such merger being authorized by law, and this is the case although the trustee will as a consequence of consolidation be compelled to receive back the stock of the consolidated company, instead of stock of the original company.

Argued Jan. 14, 1903.   Appeal, No. 276, Jan. T., 1902, by defendant, from decree of C. P. No. 5, Phila. Co., June T., 1902, No. 1134, on bill in equity in case of Pennsylvania Railroad Company v. Pennsylvania Company for Insurances on Lives

and Granting Annuities.   Before MITCHELL, DEAN, FELL,·
BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity for mandatory injunction.

DAVIS, J., found the facts to be as follows:

1. Shares of stock of the Philadelphia, Wilmington & Baltimore Railroad Company to the number mentioned in the bill, belonging to the Pennsylvania Railroad Company, were deposited with the defendant as stated in the bill, at the time therein stated, as collateral security for the performance by the railroad company of the agreement attached to the bill as exhibit A.

2. Upon said deposit, said defendant company did issue its certificates in the form and to the extent set forth in the bill.

3. Certificates by the defendant company as trustee are now outstanding to the amount set forth in the bill; and there are now on deposit under the terms of agreement with the corporation defendant as trustee, the number of shares of stock of the Philadelphia, Wilmington & Baltimore Railroad Company, part of those originally deposited, stated in the bill.

4. The holders of shares of stock of the Baltimore & Potomac Railroad Company, and of the Philadelphia, Wilmington & Baltimore Railroad Company, representing almost the entire holding in each, have determined and are of the opinion that it will be beneficial to both of said railroad companies that they should be consolidated into a new company, to be called the Philadelphia, Baltimore & Washington Railroad Company, in the way and manner and under the terms and conditions set forth in the bill.

5. The Pennsylvania Railroad Company owns a much larger proportion of the shares of stock of the Philadelphia, Wilmington & Baltimore Railroad Company than of the Baltimore & Potomac Railroad Company, in which latter company there is a considerable holding, to the extent of nearly twelve per centum by the Northern Central Railway Company.

6. The matter of the propriety of the consolidation of said railroad companies into the one railroad company upon the terms set forth in the bill is a question of judgment fairly determinable by the holders of the shares of the respective companies.

7. By the terms of agreement under which said shares of

Philadelphia, Wilmington & Baltimore Railroad Company are held by the corporation defendant it is, inter alia, provided:

Until default shall be made in the payment of interest and minimum sinking fund or principal, as hereinbefore provided, the said trustee, or the trustee or trustees for the time being, shall permit and suffer the said party of the first part to retain all the rights, powers, and privileges belonging or incident to the ownership of the stock hereby deposited, except as hereinbefore provided; and the said trustee, or the trustees or trustee for the time being, shall and will execute and deliver to the said Pennsylvania Railroad Company, or to such person or persons as may be designated either by its board of directors or by the president thereof, such powers, authorities, proxy or proxies irrevocable, from time to time, as may be necessary or expedient for carrying into full effect the powers hereby expressly retained and reserved by the said Pennsylvania Railroad Company, including, amongst other things, the right to appear at all stockholders' meetings and at all elections of the said Philadelphia, Wilmington & Baltimore Railroad Company, and to vote upon said shares of stock at such meetings or elections as fully as if these presents had never been made.

8. The corporation plaintiff has demanded from the corporation defendant that the latter shall give to the former a proxy which will enable it to vote at a meeting of the stockholders of the Philadelphia, Wilmington & Baltimore Railroad Company intended shortly to be held, in favor of the said consolidation with the Baltimore & Potomac Railroad Company.

9. The corporation defendant has refused to give the proxy because of its averment that there is no right on the part of the corporation plaintiff to demand the giving of such proxy, and because the result of giving the same, if the consolidation be voted, will be that the corporation defendant will be compelled to take in exchange for shares of stock of the Philadelphia, Wilmington & Baltimore Railroad Company now held by it, shares of stock such as would be allotted in lieu thereof in the Philadelphia, Baltimore & Washington Railroad Company.

### CONCLUSIONS OF LAW.

1. Under the reservation of right to demand proxy and to vote thereon made by the corporation plaintiff, when it de-

posited the shares of the Philadelphia, Wilmington & Baltimore Railroad Company with the corporation defendant, it is the duty of the latter to give the demanded proxy to the corporation plaintiff.

2. There was the fullest possible reservation on the part of the corporation plaintiff in the agreement to retain, until default, all rights, powers and privileges belonging or incident to the ownership of the stock, saving the matter of payment of dividends thereon. There was also fullest reservation of a right to demand from time to time proxy such as might be necessary or expedient " for carrying into full effect the powers " thus retained and reserved by the Pennsylvania Railroad Company, including the right to appear at all stockholders' meetings and to vote upon the said shares of stock at such meetings as fully as if the agreement had never been entered into or the stock deposited.

3. It is the right of the corporation plaintiff, under said reservation, to attend with a proxy to be given to it by the corporation defendant, and to vote in accordance with its own judgment upon the question of consolidation of the two railroad companies into the Philadelphia, Baltimore & Washington Railroad Company.

4. If at the meetings of the stockholders of the two companies a consolidation be ordered in accordance with law, it will be the duty of the corporation defendant to accept in lieu of the shares of stock of the Philadelphia, Wilmington & Baltimore Railroad Company now held by it, the shares of stock in the new or consolidated company which shall be issued in lieu or place of the shares now deposited.

The court entered a decree in favor of the complainants.

*Error assigned* was the decree of the court.

*John C. Bell,* for appellant.—It is an elementary and fundamental principle that in simple trusts the powers of the trustee are such only as are ordinarily incident to the protection and preservation of the trust property; he has no power to incumber, sell, exchange or convert the trust property, without the consent of his cestuis que trustent, and if he does so, he is liable and accountable to them as the beneficial owners thereof:

Wilhelm v. Folmer, 6 Pa. 296; Perry on Trusts, section 475; Hollister v. Stewart, 111 N. Y. 644 (19 N. E. Repr. 782) Canada So. Ry. Co. v. Gebhard, 109 U. S. 527 (3 Sup. Ct. Repr. 363); Duncan v. Mobile & Ohio R. R. Co., 2 Woods, 542; Knapp v. Western Vermont R. R. Co., 87 U. S. 117.

At the time the agreement was entered into in 1881, it was the common law of Pennsylvania, and generally, that where certificates of stock were pledged as collateral security and transferred and delivered to the pledgee, such stock was thereby put under the dominion of the pledgee; and he thereby became a stockholder, subject to all the liabilities, and in general having all the rights belonging to one holding the position of a stockholder: Chambersburg Ins. Co. v. Smith, 11 Pa. 120; Aultman's Appeal, 98 Pa. 505; Shelmerdine v. Welsh, 47 Legal Int. 26; Com. v. Dalzell, 152 Pa. 217; Com. v. Patterson, 158 Pa. 476; National Bank v. Case, 99 U. S. 628; Muirhead v. Kirkpatrick, 21 Pa. 237; Stuart v. Bigler, 98 Pa. 80; McQueen's Appeal, 104 Pa. 595.

Manifestly, the said recited provision of the agreement contains no express reservation to the appellee of the right and power to exchange and convert the said shares of stock. Such an agreement is, moreover, in derogation of the common-law rights of the appellant as pledgee, and of its cestuis que trustent, the certificate holders. Being an invasion of their common-law rights, it follows that the said agreement should be strictly construed.

*John G. Johnson,* for appellee.—It was the duty of the appellant to deliver to the appellee a proxy enabling the latter to vote in accordance with its views as owner of the deposited shares, at the meeting of the stockholders of the Philadelphia, Wilmington & Baltimore Railroad Company held for the purpose of deciding the question of consolidation.

By virtue of the consolidation, the shares of the old company have been transmuted or converted into the equivalent in shares of the new or consolidated company.

It is the duty of the appellant to surrender the old shares and to receive in lieu thereof the equivalent in shares of the new or consolidated company.

OPINION BY MR. JUSTICE DEAN, March 23, 1903:

At the argument of this case we had doubts whether the agreement of July 1, 1881, broad as is its language, implied a power to exact a proxy from the trustee, authorizing plaintiff to vote the remaining 160,000 shares of stock in favor of a merger of the Philadelphia, Wilmington & Baltimore Railroad, with two other railroads into a new railroad corporation to be known as the Philadelphia, Baltimore & Washington Railroad Company; that is, whether it could be fairly implied from the agreement that the trustee was bound to give to plaintiff a proxy, by which, in case the proposed merger should be accomplished, it was the duty of the trustee to accept in lieu of the original shares, 240,000 shares of the stock of the new company. By so doing, the original subject of the contract, the Philadelphia, Wilmington & Baltimore Railroad, although physically the same, would, as a corporation, pass out of existence; and although not destroyed, would lose its identity as a distinct and independent company, and the new certificates received would no longer represent, as a security, the old Philadelphia, Wilmington & Baltimore Railroad, but a new corporation, theretofore without existence, the Philadelphia, Baltimore & Washington Railroad Company. We concede, that to carry the implication thus far, is somewhat startling, yet a careful analysis of the agreement renders it inevitable. The sixth clause of the agreement reads thus :

" Sixth. Until default shall be made in the payment of interest and minimum sinking fund or principal, as hereinbefore provided, the said trustee, or the trustees or trustee for the time being, shall permit and suffer the said party of the first part to retain all the rights, powers and privileges belonging or incident to the ownership of the stock hereby deposited, except as hereinbefore provided; and the said trustee, or the trustees or trustee for the time being, shall and will execute and deliver to the said P. R. R. Company, or to such person or persons as may be designated either by its board of directors or by the president thereof, such powers, authorities, proxy or proxies irrevocable, from time to time, as may be necessary or expedient for carrying into full effect the powers hereby expressly retained and reserved by the said P. R. R. Company, including, amongst other things, the right to appear at all

stockholders' meetings and at all elections of the said P. W. & B. R. R. Company, and to vote upon said shares of stock at such meetings or elections, as fully as if these presents had never been made."

It will be noticed, that the railroad company retains "all the rights, powers and privileges belonging or incident to the ownership of the stock, . . . . except as hereinbefore provided." The right of the owner to vote the stock as he chose, unless restricted by public policy or legislation, was undoubted; no public policy forbade him to vote for the merger or consolidation of his company with one or more others; express legislation authorized him to so vote. The title of the trustee was created, defined and limited only, by the agreement under which it held possession of the stock, subject to the rights of plaintiff to demand proxies for the exercise of all the rights incident to ownership. If the owner could exercise the right to vote for a merger, the plaintiff could demand from the trustee a proxy authorizing it to appear at a stockholders' meeting of the Philadelphia, Wilmington & Baltimore Company to vote upon the question of merging this company with two others into a new company; this was a right, by the express terms of agreement, incident to ownership; the trustee was bound to give it, although such purpose was not specially mentioned in the agreement. If it desired to withhold this extreme exercise of power, it should have so restricted the sweeping general language of the agreement by expressly prohibiting the right to vote, to destroy the identity of the old corporation. But the trustee reserved the right to refuse the proxy upon but one contingency, default of the railroad company, to pay interest, sinking fund or principal. It is not alleged there was default in either particular.

As if to guard against any liability of the trustee, because of the immense powers retained by the railroad company, in the sixth clause before quoted, the ninth clause is inserted thus: "It is hereby further covenanted and agreed and this trust is accepted upon the express condition, that neither the said trustee, nor any successors in the trust, shall incur any responsibility or liability, by reason of permitting and allowing the said Pennsylvania Railroad Company to retain and reserve the power and authorities, heretofore provided for in regard to the stock

of the said Philadelphia, Wilmington & Baltimore Railroad Company."

The argument of appellant's counsel tending to show that a trustee has no right to sell or pledge the trust estate, or to vote it out of existence in the shape it came into his hands does not meet the point. The argument and the authorities cited in support of it are pointedly applicable to simple trusts; they demonstrate in such case the power of the trustee and the rights of the cestui que trustent and show that the power of the trustee extends only to the preservation and protection of the trust property, and without the consent of the cestui que trustent he cannot incumber, sell, exchange or convert the trust property. But this is not a simple trust; every word of the agreement in which it had its inception and without which it does not exist, shows it was a special trust created by the parties for a special purpose and so accepted by the trustee; the duties of the latter were fixed by the contract, and its liabilities defined by the contract, and that is all we can look to, to ascertain them.

We think the court below was right in its decree, and we therefore overrule all the assignments of error and affirm it.