Opinion by
 

 Stadtfeld, J.,
 

 This case arises upon petition for authority to sell certain real estate of the United Evangelical Church of Lansford, Pa., under the provisions of the Revised Price Act of June 7, 1917, P. L. 388. Certain undisputed facts appear in the case.
 

 In 1894 a body of persons associated themselves together in Lansford, Pa., for religious purposes, and organized as St. Paul’s United Evangelical Church of
 
 *342
 
 Lansford, Pa. The body, as formed, was unincorporated and so remains; it was and still is, affiliated and subject to the customs, tenets, rules, regulations and laws of the United Evangelical Congregational Church. The church is now subject to the rules of the East Pennsylvania Conference of the Evangelical Congregational: Church, which is a unit of the Parent Church. According to the rules of this Conference, when a church of this denomination becomes extinct or ceases to exist, its property reverted to the Conference of the Evangelical Congregational Church.
 

 After the organization of the religious association, on February 5,1896, Elizabeth Lesher, owner of certain real estate in Lansford, Pa., and a member of the association, granted the real estate, now in dispute to the trustees of the association. The recorded deed recited the terms under which the grant was made, and the terms of the religious uses and trusts and purposes for which it was granted; it contained no provision for reversion to the heirs of the grantor.
 

 In this deed, Elizabeth Lesher was joined by her husband Samuel Lesher. At some time, not disclosed by the recordman alleged option to repurchase the lot upon which the church stood, in the event of sale, was executed to Mrs. Lesher or her heirs. It provided that the heirs of Mrs. Lesher could purchase the lot at the same amount as sold, without improvements. The alleged option was in form following: “Lansford, August 30, 1895 — We, the Trustees of the United Evangelical Church, at Lansford, Pa., agreed with Mrs. Elizabeth Lesher, or her heirs that should at any time, the lot upon which the Church stands, be sold, that she or her heirs have the privilege to purchase the lot at the same amount as sold, without the improvements. Trustees: S. H. Lesher, President; E. H. Snyder, Vice-President ; Elias Sassaman, Treasurer.”
 

 This option purportedly was dated August 30, 1895, before Mrs. Lesher, the grantor, received a deed for the
 
 *343
 
 land. The property was purchased by Mrs. Lesher October 7,1895. The option was made by three trustees, one of whom was Samuel Lesher, husband of the grantor. It was acknowledged January 7, 1897, before the Recorder of Deeds of Carbon County, and filed for record on the same date. The acknowledgment was made more than a year after the option and was made by the husband of the grantor and a son, who was not á party to the purported option or agreement of sale. No authority appears on the record for the execution of said paper either from the congregation, the board of trustees or the court.
 

 The congregation continued on for some years under the rules of this denomination, but. the number of members dwindled. For some years the missionary society of the church contributed funds to help support it, totaling $1507.50 in all. Finally church services ceased, and for the past ten years the church was abandoned or extinct.
 

 Sometime in 1940, Rev. E. S. Woodring, Presiding Elder of the United Evangelical Conference, with authority of the Conference, entered into an agreement to sell the property to George Howard Bright for the sum of $800 and a petition for authority to make the sale was presented to the common pleas court under the provisions of the Revised Price Act of 1917. In accordance with the provisions of the act, the court granted a rule upon all persons interested, including heirs of Elizabeth Lesher and the surviving trustee to show cause why the sale should not be made. Service of the rule was made upon all interested of whom there was one surviving trustee and seven heirs of Elizabeth Lesher. In this proceeding no persons appeared, except Maude Lesher and her daughter, , who are widow and daughter of Howard Lesher, a son, who is deceased and would have been entitled to one-third of his mother’s rights. No others appeared although living.
 

 
 *344
 
 During the years that the church remained dilapidated and idle, no person exercised a right to purchase it. After service of the rule, the exceptants filed an answer claiming the right to purchase under the alleged option. The rule was served upon the except-ants March 17, 1941, and on April 7, 1941, the ex-ceptants sent an offer to purchase at the same price. After hearing and testimony taken the court ruled that sale should be made according to the prayer of the petition. This appeal is taken from that order.
 

 The court below, after hearing of testimony, and on the admissions in the answer, made, inter alia, the following findings of fact: “5. That St. Paul’s United Evangelical Church was an unincorporated association and from the date of its organization to the present date has been affiliated with and subject to the customs, tenets, rules, regulations and laws of the United Evangelical Church, which was subsequently succeeded by the Evangelical Congregational Church. 6. That the Evangelical Church of Lansford, Pa., is now subject to the rules of the East Pennsylvania Conference of the Evangelical Congregational Church. 7. That for several years last past the Evangelical Congregational Church of Lansford, Pa., has ceased to exist, no services have been held, the church property has been closed and allowed to deteriorate, and congregational meetings have ceased to be held. 8. That Rev. E. S. Wood-ring, as the Presiding Elder of the Evangelical Congregational Conference of the Eastern Part of Pennsylvania, and the authority vested in him by reason thereof, has agreed to make private sale of the premises herein described to George Howard Bright for the price or sum of Eight Hundred ($800) Dollars......11. That in accordance with the rules and regulations of the Conference, when a church becomes abandoned or extinct the property and assets of the same revert in title to the Church Conference. 12. That Rev. E. S. Woodring as Presiding Elder of the Church had au
 
 *345
 
 thority from the Church Conference to make sale of the property herein described in 1939, by reason of the fact that the Evangelical Congregational Church of Lansford, Pa., was abandoned.”
 

 The court below made, inter alia, the following conclusions of law: “1. That St. Paul’s Evangelical Church of Lansford, Pa., being an abandoned or extinct church under the rules of the Evangelical Congregational Conference for the Eastern Part of Pennsylvania, the property of St. Paul’s Evangelical Church of Lansford, Pa., reverts to the Evangelical Congregational Conference for the Eastern Part of Pennsylvania. 2. That the agreement entered into between the trustees of St. Paul’s Evangelical Church of Lansford, Pa., giving Elizabeth Lesher or her heirs the right to purchase the lot of ground upon which the church stands for the same price as paid for it in the event that it is no longer used as a church, is void for the following reasons: (a) That no evidence was submitted to establish that the members of the church congregation had authorized the trustees of the church to enter into the agreement with Elizabeth Lesher or her heirs, (b) That no authority was given by the Court of Common Pleas of Carbon County, as provided for under the provisions of the Act of April 18, 1853, P. L. 503, to the Trustees of the church to enter into an agreement with Elizabeth Lesher or her heirs. 3. Under the provisions of the Act of 1917, P. L. 388, the court has the authority to make an order authorizing the duly constituted officer of the Evangelical Congregational Conference for the Eastern Part of Pennsylvania, Rev. E. S. Woodring, Presiding Elder, to sign, execute and deliver a deed for the real estate herein described. .
 

 The deed for the property in question bears date February 5, 1896. At this time the original Price Act of April 18,1853, P. L. 503, was in force. This act was superseded by the Act of June 7,1917, P. L. 388, which
 
 *346
 
 is in substance a revision of the Act of 1853, and is the act under which the present proceedings were instituted: It has been held in
 
 St. Joseph’s Lithuanian Roman Catholic Church’s Petition,
 
 273 Pa. 486, 117 A. 216, that a church congregation which is an unincorporated association is within the expressed provision of the Revised Price Act of 1917.
 

 The first assignment of error relates to the exclusion of oral testimony as to the understanding of the parties in regard to the purpose of the option of August 30, 1895. The paper is plain and unambiguous on its face and speaks for itself. If we were to give any validity to its terms, it would be in derogation of and in contradiction to the terms of the trust under which the property was conveyed under the deed from Elizabeth Lesher and her husband S. H. Lesher to the Trustees of St. Paul’s United Evangelical Church of Lansford, without any reversionary interest in the grantors. Under the admissions in the answer and the findings of the chancellor, the said church, from the date of its organization to the present date, has been affiliated with and subject to the customs, tenets, rules, regulations and laws of the United Evangelical Church which was subsequently succeeded by the Evangelical Congregational Church, and is now subject to the rules of the East Pennsylvania Conference of the Evangelical Congregational Church. Under said rules and regulations, the said Evangelical Congregational Church of Lansford having been abandoned and become extinct, its property and assets revert to the Church Conference.
 

 Another insuperable objection to the validity of the alleged option is that there is nothing in the record to show that there was a meeting of the congregation to authorize the trustees to give such an option, nor is there anything in the record to show any authority ever having been given for such an option.
 

 
 *347
 
 Before a trustee can exercise rights he must be able to point to some express or implied authority in the Act of Assembly creating the trust, or to the instrument creating it, In this case the- trustees nowhere on the records of the church or of the court, either expressly or by implication, have shown any authority to execute or give such an instrument.
 

 In
 
 Seif v. Krebs,
 
 239 Pa. 423, 86 A. 872, at page 425, the rule is laid' down as follows: “It is an undoubted rule of the law of trusts that a trustee has no power to sell trust property unless such power is, conferred upon him by the instrument creating the trust, either by express words or by necessary implication. The rule is so stated in the 28 Encyclopedia of Law, page 992, and is supported by the cases there cited. As stated in Lewis on Perpetuities, cited in
 
 Yard’s Appeal,
 
 64 Pa. 95, and again cited in
 
 Nauman v.
 
 Weidman, 182 Pa. 263, ‘land dedicated to the service of charity and religion is practically inalienable,’ and it is there stated that the power to sell land and apply the proceeds to the same uses is exercised in this State under the Act of April 18, 1853, P. L. 503.” .
 

 In the case of
 
 Pennsylvania R. R. Co. v. Penna. Co., Ins. Etc., Appellant,
 
 205 Pa. 219, 54 A. 783, the rule was laid down that the power of a trustee extends only to the preservation and protection of the trust, property, and without the consent of the cestui que trust he cannot incumber, sell, exchange or convert the trust property.
 

 In the case of
 
 Appeal of the First Methodist Protestant Church of Scranton,
 
 16 W. N. C. 245, the Supreme Court has ruled that property of an inactive or extinct religious society is- not subject to division among its members, and does not revert to original grantors.
 

 Under the undisputed facts the court below had jurisdiction to make the order of sale, and there is nothing
 
 *348
 
 in the record which would warrant a reversal of its order or decree in the instant case.
 

 The assignments of error are overruled and the order of the court below is affirmed. Costs to be paid by appellants.