# Kramph's Estate.

*Wills—Charitable bequests—Variation of terms—Equity—Church law.*

1. Under the general jurisdiction of a court of equity to administer a charity, it has power to vary the precise terms of the charitable bequest so far as is necessary to carry out the general charitable intent.

2. The requirements of a will providing for the establishment of a University of the New Jerusalem, to be founded in the consolidated city of Philadelphia, to teach, and to train New Church ministers in, the doctrine of the New Jerusalem, as laid down in the writings of Swedenborg, are fulfilled by the establishment of an institution with buildings located in the immediate vicinity although not within the corporate limits of Philadelphia, the teachings of which are based on the writings of Swedenborg; and it is immaterial that such institution was founded by a sect of Swedenborgians not in existence at the time of testator's death, inasmuch as the gift was not to a denominational church, or to any subordinate body of such church.

*Wills—Charitable bequests—Religious institutions—Doctrine—Public policy.*

. 3. Although the writings upon which the doctrines of a religious institution are based may be susceptible of a construction which would make them obnoxious to certain common standards of morality, a bequest to such an institution will not be defeated as against public policy where it does not appear that such writings constitute any part of the religious doctrines of the church, at least not with that interpretation put on them which would make them offend.

Argued Oct. 25, 1909. Appeals, Nos. 112 and 133, January T., 1909, from decree of O. C. Lancaster County, April T., 1903, No. 104, dismissing exceptions to adjudication in Estate of Frederick J. Kramph, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Exceptions to adjudication. Before SMITH, P. J.
The opinion of the Supreme Court states the case.

*Error assigned* in each appeal was decree of the court dismissing exceptions to the adjudication.

*A. S. Weill*, and *W. U. Hensel*, for the Academy of the New Church, appellant.—The only test of "perniciousness" of religious teachings or their "derogation of statutes" is whether they teach resistance, antagonism or opposition to the civil law and produce or tend to produce violations of it. It is what men do, not what they think, that the law reaches: Manners v. Library Co., 93 Pa. 165; Holbrook's Est., 213 Pa. 93; Spring's Est., 216 Pa. 529; Updegraph v. Com., 11 S. & R. 394; Vidal v. Girard's Executors, 43 U. S. 127; Miller v. Gable, 2 Denio, 492; Knight's Est., 159 Pa. 500; Jones v. Watford, 62 N. J. Eq. 339 (50 Atl. Repr. 180), aff'd in 64 N. J. Eq. 785 (53 Atl. Repr. 397); Thornton v. Howe, 31 Beavan, 14; Reg. v. Hicklin, L. R. 3 Q. B. 360; George v. Braddock, 45 N. J. Eq. 757 (18 Atl. Repr. 881); Reynolds v. U. S., 98 U. S. 145; Pare v. Clegg, 29 Beavan. 589: U. S. v. Freight As-

sociation, 58 Fed. Repr. 58; Besant v. Wood, L. R. 12 Ch. Div. 605.

The fact that the academy is located just outside the city does not constitute a valid objection to its claim: Old Ladies' Home v. Hoffman, 117 Iowa, 716 (89 N. W. Repr. 1066); Zanesville Canal & Mfg. Co. v. City of Zanesville, 20 Ohio, 483.

The devise or bequest was not given to an institution which was to be identified with the General Convention: Presbyterian Congregation v. Johnston, 1 W. & S. 9; Schnorr's App., 67 Pa. 138; Ehrenfeldt's App., 101 Pa. 186; Trustees, etc., v. St. Michael's Evangelical Church, 48 Pa. 20; Miller v. Gable, 2 Denio, 492; Greek Catholic Church v. Orthodox Greek Church, 195 Pa. 425.

*John G. Johnson*, with him *John A. Coyle*, for trustees, appellants.—The Academy of the New Church is controlled by and is the Institution of the General Church of the New Jerusalem, a schismatic body of New Churchmen, not connected with the General Convention, nor in existence at the time of Kramph's death and its claim should, therefore, be rejected: App v. Lutheran Congregation, 6 Pa. 201; Bose v. Christ, 193 Pa. 13; Greek Catholic Church v. Orthodox Greek Church, 195 Pa. 425; McAuley's App., 77 Pa. 397; Landis's App., 102 Pa. 467; Schnorr's App., 67 Pa. 138; Watson v. Jones, 80 U. S. 679; Krecker v. Shirey, 163 Pa. 534; Roshi's App., 69 Pa. 462.

*Charles G. Baker* with him *T. Roberts Appel*, for heirs of Frederick J. Kramph, deceased.

OPINION BY MR. JUSTICE STEWART, July 1, 1910:

These appeals are from a final adjudication by the orphans' court of Lancaster county distributing the estate of Frederick J. Kramph, who died more than fifty years ago, testate. By his will, the testator, after making provision for his widow and children, and making certain other bequests, gave the net balance of his whole estate to seven

trustees, naming them, and their successors, "in trust, for the purpose of endowing a university of the New Jerusalem, to be founded in the consolidated city of Philadelphia, for universal New Church education in these United States, and for the education of New Church ministers, who are to teach the doctrine of the New Jerusalem, as laid down in the writings of the Honorable Emanuel Swedenborg—said New Church University to be under the care and superintendence of a body of trustees rendered corporate by a perpetual charter legally obtained." The net balance of the estate as now ascertained is $38,785. In the distribution proceeding in the court below, certain of the heirs at law of the testator appeared, and claimed the funds on the ground that the system of conduct and morals as professed by Swedenborg and as taught in his writings, is repugnant to the law of the land, and that a bequest to endow an institution for the inculcation of such doctrine is void as offending against established public policy. This view prevailed with the auditing judge, and the fund was awarded to the heirs at law. From this adjudication two appeals were taken: one by certain persons claiming to be the regularly appointed successors to the trustees named in the will; the other by The Academy of the New Church, an incorporated institution of learning, claiming that it conformed to the description of the university contemplated by the testator, and that it is therefore the proper and only object of the testator's bounty. These appeals were twice heard. Following the first hearing, this order was made by the court, "June 22, 1909. The judges who heard this case are unanimously of the opinion that the decree must be reversed. It cannot be sustained on any ground whatever. But we are not entirely agreed as to which of the parties claiming as legatees comes most clearly within the expressed intent of the testator. This question is, therefore, ordered to be reargued on behalf of these claimants, at Pittsburgh, in the first week of October." This order, sustaining the bequest, eliminated the heirs at law

from the controversy. The ground on which our united concurrence in rejecting the conclusions reached by the learned judge of the orphans' court rested, was, that while there are writings of Emanuel Swedenborg which may be susceptible of a construction which would make them obnoxious to certain of our common standards of morality, yet it does not appear that such writings constitute any part of the religious doctrines of the New Jerusalem Church, at least not with that interpretation put on them which would make them offend. Upon this branch of the case we need not enlarge further. We are now therefore concerned only with the dispute between those claiming as trustees under the will, and The Academy of the New Church. We have above quoted from the will the devise proper. This follows: "All moneys which may accumulate or come in, shall be immediately invested in real estate or perpetual ground rents, all the incomes of which are to remain the unalienable property of the said New Church University, and be appropriated for the purposes set forth in the charter. Provided, that my aforementioned trustees shall not transfer any part of the income of my property designated for the benefit of the said New Church University, until sufficient funds are provided, either by subscription or endowments of other contributors, or by the accumulation of this bequest, to yield, independently of the cost of the university buildings, a clear annual income of four thousand dollars. And, provided further, that whenever a perpetual charter for the establishment of such a New Church University shall be obtained, the above mentioned trustees, or if prior to the final settlement, other trustees should have been appointed by charter, my executors shall transfer all the rights and trusts given to them by this, my last will and testament, to the trustees then and in that case lawfully appointed and constituted in and by said charter."

Manifestly, the ultimate end the testator had in view was the establishment of an institution for universal New Church education. This he expected to accomplish

in one of two ways: either by encouraging the establishment of such an institution by others of like faith and zeal with himself, by providing a permanent fund to the extent of the net balance of his estate, for the support and maintenance of such institution by them established, and as an inducement to effort on their part; or, failing in this, by withholding his bounty until, with its accumulation, it would itself be adequate in amount for the purpose. This much is made manifest by the provision that no part of the income of the particular "property designated for the benefit of the said New Church University," shall be transferred "until sufficient funds are provided, either by subscription or endowments of other contributors, or by the accumulation of this bequest, to yield independently of the cost of the university building, a clear annual income of Four thousand dollars." It was only in the latter event that active duty was imposed on the trustees in connection with the founding and establishing of the university. This appears from the provision directing that payment be made by the executors whenever a perpetual charter for the establishment of such a university shall be obtained (by) the above-named trustees; or if prior to the final settlement other trustees shall have been appointed by charter, in such case to pay over to the trustees then and in that case lawfully appointed and constituted in and by the charter. We think it apparent that the word "by" as we have here introduced it was unintentionally omitted from the original will. Its use is necessary to make a provision entirely intelligible which without it would be unmeaning. The testator was here providing for a situation which, if it happened, would leave the trustees virtually without any functions whatever to discharge. As we read the will the question then presented is, does such situation as was contemplated by the testator, now exist; that is to say, has a perpetual charter for the establishment of such a New Church University as the testator had in mind, been obtained, and does such university exist? If so, the fund belongs to the institution so chartered, and

is payable to its trustees for the purposes of the trust, to-wit, the endowment of the institution. If no such institution has been established, then, the final settlement having been made of the estate, the fund belongs to the trustees named in the will, upon the further trust, to accumulate until the fund is sufficient to establish such an institution in the manner indicated by the testator, and then apply directly to the end testator had in view. The Academy of the New Church, one of the appellants, is an incorporated institution of learning, chartered in 1877. It is located in the suburbs of the city of Philadelphia, where it owns and occupies some eighty-seven acres of land on which are erected the necessary college buildings, together valued at $252,035.06; and, in addition, it has an endowment fund yielding a sum very much in excess of the $4,000 required by the provisions of the will. As described in its charter, the academy was incorporated for the promotion of education in all its various forms; one special purpose being "the education of young men for the ministry;" and, generally, "the propagation of the Heavenly Doctrines of the New Jerusalem and establishing the New Church signified in the Apocalypse by the New Jerusalem." We have this finding by the auditing judge. "This incorporated New Church University is for New Church education in these United States, and for the education of New Church ministers who are educated 'to teach the doctrine of the New Jerusalem as laid down in the writings of the Honorable Emanuel Swedenborg.' The Academy of the General Church with its university buildings at Bryn Athyn exactly meets the requirements imposed by the testator upon the beneficiary intended by him." If we are to accept this conclusion of fact, then, according to the interpretation we have given the will, the question is resolved. But, it is urged that the conclusion cannot be accepted, since it overlooks certain clearly defined requirements of the will. It is pointed out that the will contemplates the establishment of a University within

the limits of the consolidated city of Philadelphia; whereas the academy is outside the corporate limits. And again, it is insisted that the Academy of the New Church "is controlled by and is the institution of the General Church of the New Jerusalem, a schismatic body of New Churchmen not connected with the General Convention, nor in existence at the time of Kramph's death." As to the first objection, it is only necessary to say that having regard to the purposes and objects the testator had in view, this in no sense can be said to be a material variance. It is impossible to conceive of any purpose the testator had in his mind which could not be quite as well secured by a university within the suburbs of Philadelphia, as by one located immediately across the dividing line and within the city limits. If we eliminate for the moment the question raised by the second objection, and assume that the academy in all respects, except that of location, conforms to the requirements of the will, and is meeting all demands, could it be urged that the general intent of the testator, in connection with his bequest, would be better effectuated by the establishment of another distinct university with like aims and objects, but feebler in its means, within the limits of Philadelphia, than by applying his bounty to the strengthening of the institution already established? We think manifestly not. Besides, if we were to deny the bounty to the academy to await the establishment of a proper institution within the city limits, so far as the evidence shows, it would be a postponement for such a length of time as would to a large degree disappoint the charity. Under the terms of the will the fund would only become available for that purpose when, supplemented by its own accretions and the subscriptions of others, it would yield "independently of the cost of the university buildings a clear annual income of four thousand dollars." It does not appear that a single dollar has been subscribed, or that any effort whatever has been made by others to establish an institution of this description within the city limits, not-

withstanding the inducement held out by the testator in the matter of endowment. For more than fifty years the will of the testator has been inviting such effort, without any response having been made. Except as such institution be established through this bequest alone, there is little reason to expect that it ever will be established. Another fifty years, making a hundred since the death of the testator, must elapse before the charity could become effective. This might not utterly defeat it; but that it would fail to meet the testator's expectation, cannot be questioned. Under the general jurisdiction of a court of chancery to administer the estate of a charity, it has power to vary the precise terms of a charitable trust, when necessary. This rule is too well established to be doubted. It is thus expressed by LOWRIE, C. J., in City of Philadelphia v. Girard's Heirs, 45 Pa. 9, "When a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced. It is the doctrine of approximation, and it is not confined to the administration of charity, but is equally applicable to all devises and contracts wherein the future is provided for, and it is an essential element of equity jurisprudence." We accordingly hold that the fact that the academy is located not within, but a short distance outside, the limits of the consolidated city of Philadelphia, should not be allowed to interfere with its capacity to take under the will of this testator.

The next objection is based on a misapprehension of the real question. We are not here dealing with a bequest to a denominational church, or to any subordinate body of such church. As we have construed the will, the bequest is to the trustees of an established institution of learning, which, judging from its charter, is in subordination to no ecclesiastical body, but is subject only to the control of its own trustees, just as the will provides that

the institution contemplated by the testator should be. Its only obligation is to observe and fulfill the functions for which it was chartered, "the propagating of Heavenly Doctrines of the New Jerusalem, and establishing the New Church signified in the Apocalypse by the New Jerusalem, promoting education in all its forms, educating young men for the ministry, publishing books," etc. The bequest being direct to the trustees, except as it can be made to appear that it was "in ease" of some particular church body to which the academy is subordinated, it must go to and be vested in the trustees, no matter how many different churches or denominations claim to be the true interpreters of the doctrine of the New Jerusalem, as laid down in the writings of Emanuel Swedenborg. Therefore it is that the fact that, subsequent to the death of testator, divisions grew up between those professing the faith of Swedenborg, resulting in the establishment of a new confederation styling itself the General Church of the New Jerusalem, as distinguished from the original confederation known as the General Convention, is a matter of no significance. Were the dispute over property belonging to the general church before the separation, or schism, or whatever it may be, it would be for the court to decide which body was in harmony with its own laws, usages, and customs as accepted by the body before the division took place: McGinnis v. Watson et al., 41 Pa. 9. In a certain case the inquiry might be whether the body holding the property was holding or teaching a different doctrine, or using a form of worship so far variant as to defeat the declared objects of the trust: Watson v. Jones, 80 U. S. 679. But no such questions can arise here. All the court in this case has to do is to identify the object of the testator's bounty. Is this academy that object? If it be dedicated to Universal New Church education, the education of New Church ministers to teach the doctrines of the New Jerusalem as laid down in the, writings of the Honorable Emanuel Swedenborg, then it is; and we are not called upon to

decide as between a General Convention and the General Church, which one the more intelligently interprets and understands the teachings and doctrines of Swedenborg. So far as denominational name is material, such fundamental distinctions as exist between Trinitarians and Unitarians may be resorted to to define and limit the trust, but not usually lesser and more refined shades of doctrine existing in different branches of the same church: Ayres v. Weed, 16 Conn. 291; Hinckley v. Thatcher, 139 Mass. 477. The difference between the doctrine taught by the academy and that accepted by the adherents of the General Convention, results simply from different interpretation of the same writings. Both alike rest on the writings of Emanuel Swedenborg, and both alike have respect to these as supreme authority. It is not for us to decide between them. Our conclusion is that the academy of the New Church, an incorporation chartered under the laws of the state meets all the requirements of the will, and therefore is the institution through which the testator's charity is to be administered. The decree in this case is reversed; and it is now ordered and decreed that the balance for distribution, to-wit, the sum of $38,785, with any accumulations, if any, be paid over by the accountants to The Academy of the New Church, the appellant in No. 112, January Term, 1909; the costs of both appeals to be paid out of the fund.

MESTREZAT and POTTER, JJ.:

We did not sit when this case was first argued and, therefore, express no opinion on the question adjudicated by the decision of the sitting judges and embodied in the order of June 22, 1909. On the reargument before the full bench, the only question heard and determined was: Which of the two parties claiming as legatees is entitled to the fund awaiting distribution?