## Pruner's Estate

*James C. Furst*, for petitioners.

*N. B. Spangler* and *R. H. Gilbert*, for respondent.

FLEMING, P. J., August 29, 1934.—This case is before us upon the petition of the children and legal representatives of Sallie M. Hayes, deceased, praying that the trust established by the last will and testament of E. J. Pruner, late of the Borough of Bellefonte, deceased, creating what is known as the "Pruner Orphanage" be declared inoperative and that the trust funds and property of the same be vested in the petitioners. Answers have been filed and testimony taken. From such testimony we make the following

### Findings of fact

1. The decedent, E. J. Pruner, died on or about May 14, 1904, having first made his last will and testament, bearing date November 9, 1896, which was duly probated in Centre County, and letters testamentary thereon issued to The Fidelity Trust Company of Philadelphia, Pa., on September 27, 1904.

2. By said last will and testament, the decedent provided as follows:

"I give and bequeath in Trust to the Corporation of Tyrone and the Corporation of Bellefonte, Pa., the old Homestead which I own at Bellefonte, Pa., for a Home for friendless children and for the purpose of endowing said Home I bequeath in Trust forever to the Corporation of the Borough of Tyrone, Pa. and the Corporation of the Borough of Bellefonte, Pa. the Brick Building on Penna

Avenue near Juniata River known as the Pruner Block and also the Block corner Penna Avenue & 11th Street known as the Hoover Block and also my land in the State of North Dakota and my land in State of Kansas and my land in Taylor Worth & Rush Township, Centre Co. Pa. for the purpose of an endowment to said School. The childrent sent to said Home are not to be under five years of age and when they arrive at 12 years of age places are to be obtained for them by the Board of Managers of the Home. When there is an excess of Revenue for the support of Friendless Children from the Towns of Tyrone and Bellefonte then Friendless Children can be admitted from Altoona, Pa. It is distinctly to be understood that this Home is not to be a Home for Pauper Children but for children who have no parents. I appoint the Fidelity Trust and Safe Deposit Co. of Phila my Executor and to carry out the provisions of this Will."

3. A codicil or codicils were added thereto as follows:

"Should there be any Reasons why the Borough of Tyrone and the Borough of Bellefonte Cannot Carry out the provisions of this will then the property for said Home is bequeathed to my niece Sallie M. Hayes

E. J. PRUNER

as I have stated on page 8th of this will should there exist any reasons why the Borough of Tyrone and the Borough of Bellefonte Cannot Carry out the provisions of this Will in relation to the Home for Friendless Children then the Property that was bequeathed to the Borough of Tyrone and Borough of Bellefonte for the purpose of a Home if such becomes invalidated from any cause then said Real Estate is bequeathed absolutely to my niece Sallie M. Hayes of Bellefonte, Pa. and all legacies that may revert back to Estate of E. J. Pruner are for the benefit of the Home for Friendless Children provided said Borough of Tyrone and Borough of Bellefonte Can Carry out the provisions of the Will and if they cannot then all legacies that Revert back to Estate of E. J. Pruner to be vested in Sallie M. Hayes

E. J. PRUNER

The Houses on Penna Avenue Tyrone Pa near Paper Mill I give in Trust to Clara R. Moyer she to receive the Rents and Income from the same during her natural life. She keeping the same in Repair and Paying the Taxes on the same and at the Death of Clara R. Moyer the two Houses to Revert back to Estate of E. J. Pruner and to go to the Home for Friendless Children provided they the Corporation of Tyrone & Bellefonte can accept the same and carry out the provisions of this will & otherwise if they cannot the two Houses to go to My Niece Sallie M. Hayes of Bellefonte, Pa."

4. The Borough of Tyrone and the Borough of Bellefonte duly accepted the said trust, took over the trust funds and property as provided in the will, and have been and still are operating the E. J. Pruner Home for Friendless Children in the Pruner homestead, situated on Pine Street, in the Borough of Bellefonte, Centre County, Pa.

5. Children have been admitted to the said Home for Friendless Children who were not residents of the Boroughs of Tyrone and Bellefonte, in the sense that they did not reside within the actual legal limits of the said municipalities, but such children were residents of the immediate vicinity thereof.

6. Children have been cared for and maintained in the said Home for Friendless Children after they have reached the age of 12 years.

7. Children have been admitted to the said Home for Friendless Children after they have reached the age of 12 years.

8. None of the children so admitted have been pauper children, in the sense that they had prior thereto become public charges.

504

9. Such children admitted have been friendless children, in the sense that they have been without either or both parents.

10. No evidence of mismanagement has been shown.

11. Bona fide and diligent efforts have been made by the board of managers of said Home for Friendless Children to place children in permanent homes upon their attaining the age of 12 years.

*Discussion*

Thompson, Construction of Wills, 2, sec. 2, says:

"There is a substantial difference between rules governing the interpretation and rules governing the construction of dispositive provisions in a written instrument. Interpretation is employed for the purpose of ascertaining the true sense of any form of words, while construction involves the drawing of conclusions regarding subjects that are not always included in the direct expression. Before construction of a will can ever take place, interpretation must be resorted to, if there is a doubt as to the testator's meaning. The meaning of the testator's words must be ascertained by interpretation before there can be a judicial construction of his will. It is only when interpretation is finished that construction begins. In interpretation it is the duty of the court to bring the written expression of the testator in harmony with the intention. If the language employed by the testator is plain and unambiguous, no rules of construction are required to aid in its interpretation, and the usual and ordinary meaning will be given to the words and terms unless a contrary meaning be clearly shown by the context." (Citing Wood v. Schoen, 216 Pa. 425.)

Furthermore, we find in Long's Estate, 228 Pa. 594, that it is held that in the absence of a clear expression of intention to the contrary, the presumption is that the testator used the words in which he expressed himself in his will in their strict and primary acceptation and ordinary sense, as called for by the whole instrument.

The intent of the testator that a home for "friendless" children should be established is clear. This intent is shown throughout the whole instrument, running down to the last codicil wherein he directs real estate originally devised for life to Clara Moyer to pass to the home for friendless children at her death. It cannot be said that testator's interest in this project lessened as additions were made to the original will. His requirement was that children should not be under the age of 5 years when admitted to the home. When such children attained the age of 12 years, "places are [were] to be obtained for them by the Board of Managers of the Home." In the light of the general charitable intent of the testator, such a provision cannot be construed to mean that such children were to be ejected from the home immediately upon reaching their twelfth birthday. Children were directed to be first admitted from the "towns" of Tyrone and Bellefonte, and, surplus revenue accumulating, then from "Altoona, Pa." It was not to be a home for "pauper" children but "for children who have no parents."

The term "friendless" is defined in Webster's New International Dictionary as being "destitute of friends." The term "friend" is therein defined as "one who entertains for another such sentiments of esteem, respect, and affection that he seeks his society and welfare; a well-wisher; an intimate associate; sometimes, an attendant." The New Century Dictionary defines "friendless" as being "without friends; . . . forlorn" and defines "friend" as being "one who is attached to another by feelings of personal regard".

In modern times, with our highly organized social welfare systems, it is difficult to comprehend anyone being entirely without someone who could be said

to come within the scope of the definitions cited. However, we find that the testator himself has explained his meaning of the word "friendless" when he directs that the children to be admitted shall not be paupers but shall be children without parents.

The word "pauper" is defined in Webster's New International Dictionary as being "a person destitute of means except such as are derived from charity, specif. one who receives aid from public poor funds." The New Century Dictionary defines the term as "a person in utter poverty or destitution. One who being without private means of support lives as a charge upon the community." Thus it is clear that the testator had in mind the fact that the home which he had directed to be established should not become a "poorhouse" in the common and accepted use of such term, wherein could be lodged those children who had become a public charge, to the relief of such children and that of the municipality wherein they were settled as well.

The testator affirmatively stated what he had in mind in using the word "friendless" by providing that it should be a home for children who had no parents. It is to be noted, however, that the testator did not impose the condition that either or both of the parents of such children be dead.

It frequently happens that a parent, and sometimes both parents, abandon and desert their offspring. While remaining the natural parent of such abandoned child, such parents take away from the child those rights of care and maintenance to which they are legally entitled, thereby placing the child, so far as it is concerned, in the same status as if such natural parent were dead. It is not equitable or just that such a child should be penalized by the act of the natural parent who wilfully evades his or her legal obligation. This is clearly recognized in Pennsylvania in adoption proceedings, where the consent of a parent "who has abandoned the child" is unnecessary when "such fact is proven to the satisfaction of the court or judge hearing the petition," and, when "such court or judge shall so find as a fact": Act of April 4, 1925, P. L. 127, sec. 2; Act of April 26, 1929, P. L. 822, sec. 2.

Nor can the testator's direction that the home shall be "for children who have no parents" be construed to mean that such child must be deprived of both father and mother by death or abandonment. His intent was to provide a home for "friendless" children. At the date of the will, prior thereto from the beginning of time, as well as in the present situations have occurred, are occurring, and will continue to occur wherein a child is deprived of parental care and maintenance by the death or abandonment of a father or mother, leaving the surviving parent unable, by reason of physical incapacity, or from the necessity for caring for other dependents, wholly unable to assume the responsibility of caring for and maintaining such child. Surely such a child is a "friendless" child, under the definitions cited and the clear charitable intent of the testator. There being no clear expression to the contrary, we must presume and conclude that the testator used the phrase "for children who have no parents" in its strict and primary acceptation and ordinary sense, as called for by the whole instrument: Long's Estate, supra. The testator did not say that the home should be for children who did not have a "parent", in the singular, but used the plural word "parents", indicating that it was to be a home for children deprived of one or both parents, either by death or abandonment.

The requirements for admission imposed as to age require little if any discussion, the language being clear and unambiguous. Children must be at least 5 years of age before they can be admitted. "When they arrive at 12 years of age places are to be obtained for them by the Board of Managers". By no rule of construction can this be said to require the board of managers to eject the

child from the home immediately upon its reaching its twelfth birthday, as we have already said. The direction imposes upon the board of managers the duty of exercising good faith and reasonable diligence in procuring a home for each child as soon after reaching the age of 12 years as is reasonably possible. The length of time required, we recognize, will depend entirely upon the availability of such homes, the propriety of the same, the temperament of the child, its ambitions, former environment, and many other things necessary to be considered in such cases. In the light of the testator's general charitable intent, there is no question that, pending the exercise of an honest and diligent effort to procure a place for the child by the board of managers, the child shall be permitted to remain in the home and be maintained there as before.

The question as to the territorial limits from which children shall be admitted depends upon the interpretation of the word "towns", as used by the testator in his will. In 8 Words & Phrases (1st series), 7021, as well as in 4 Words & Phrases (2d series), 946, we find the word "town" defined as follows:

"The word 'town' does not necessarily include only that part of an aggregation of dwelling houses which is within the corporate limits, but usually has reference merely to a geographical location, without regard to the corporate limits".

Again in 7 Words & Phrases (3d series), 537, we find:

"The word 'town' implies the idea of a considerable number of people living in close proximity, as distinguished from a rural settlement, but does not necessarily imply incorporation."

Furthermore, it is to be noted that the testator when designating the trustees names them as "the Corporation of Tyrone and the Corporation of Bellefonte". In seeking the intent of the testator, courts will presume, in the absence of any language in the will repelling such presumption, that the words and expressions used were employed in the light of the settled meaning which the law attaches to such words: Beck's Estate, 225 Pa. 578; Stout v. Good, 245 Pa. 383. It is to be presumed, therefore, that, when the testator used the word "corporation" relative to Tyrone and to Bellefonte, it was used in the light of the settled meaning of the word and that the testator recognized the corporate existence of these two municipalities. This is significant when we later find the testator using the general word "towns" in referring to the limits from which children shall be admitted. This use of the broader term "towns" clearly indicates to our mind that he intended the limits to be in accord with the definitions last cited above. If it were otherwise, he would have used the words "corporate limits", he having been familar with the use thereof when designating the trustees.

It is further to be noted that the testator has provided that, when an accumulation of revenue exists, children shall be admitted "from Altoona, Pa." Here he omits entirely the use of any limiting word and uses a designation used only by the post office authorities in designating the use of such office. We therefore interpret and construe the direction of the testator to include children, possessing the other necessary qualifications, from such territorial limits as are served by free delivery (not rural free delivery) from the postoffices in the corporate limits of the Boroughs of Tyrone and Bellefonte.

Having carefully considered and thus interpreted and construed testator's intent with reference to this trust, we must now consider the evidence adduced in relation to the averments of the petition praying that this trust be declared inoperative and the trust funds and property vested in the petitioners.

The petition avers, inter alia, in substance, as follows:

(1) That the trust is now, and has been for a year preceding the date of the petition, inoperative.

(2) That the Boroughs of Tyrone and Bellefonte have shown by their opera-tion of the home that they cannot operate the same in conformity with the terms of the trust.

(3) That the cost of operation has been excessive, and that moneys from surplus have been used in the operation of the home.

(4) That at the time of the presentation of the petition and for many months previous there was not a single inmate possessing the qualifications prescribed by the testator in his will.

That the burden is upon the petitioners to show, by a preponderance of the evidence, that the material averments of the petition are true is undeniable.

Of the four averments noted above, none is strictly relevant to this issue except the first. If the home is not operated in conformity with the terms of the trust, or if the home is being mismanaged, such facts, per se, do not establish the essential fact that the trust is inoperative. Interested parties have their remedies to correct any such abuses: Orphans' Court Act of 1917, sec. 9. The petitioners' burden is not met by showing that inmates were received who did not possess the qualifications prescribed by the testator. That does not show a lack of operation of the trust. Positive proof that children possessing the required qualifications have sought admission and have been refused, and this by a preponderance of the evidence, would be required. Even though it had been shown that no children possessing the necessary qualifications had, to this date, applied for admission to the home, the essential fact of inoperation would not be established. To presume that there is no likelihood of friendless children, entitled to and needing the care and maintenance of this charitable trust, would be highly unreasonable. To conclude that, because children may have been admitted whose qualifications were in doubt, the intent of the testator had been violated, and that, because of this error, children rightfully entitled to this beneficence should be penalized by having the trust funds and property vested in the petitioners, is preposterous.

In Hamilton v. John C. Mercer Home, 228 Pa. 410, 416, which was a bill in equity to declare failure of a charitable trust to provide a home for disabled Presbyterian ministers who did not use tobacco, it appeared that in the 21 years of the life of the home only 35 applications had been received, out of which 15 were approved and became residents. Of such 15, 10 had resigned or had left the home for various reasons and 4 remained until the time of their death. Only 1 was a beneficiary at the time the bill in equity was presented. The managers of the home conceded that the object of the trust had practically and for all purposes ceased, this being the contention of the bill. The Supreme Court, in a per curiam decree, adopted the reasoning of Judge Sulzberger, of Court of Common Pleas No. 2 of Philadelphia County, who said, in dismissing the bill (p. 420):

"The opinion of the trustee that the trust has definitely failed may, of course, be heard by the chancellor, but his judgment cannot be controlled by it. Before he can strike down a charitable trust his conscience must be satisfied. And this would be true, even if the plaintiffs and defendants formally united in their opinion and in the prayer for the decree."

The condition imposed by the testator was that, if the Boroughs of Tyrone and Bellefonte could not carry out the provisions of this trust, the corpus thereof should go to Mrs. Hayes, the mother of the petitioners, now deceased. But the indisputable fact exists that these municipalities did accept the trust, have administered it for 30 years, and are continuing to do so at this time. It is not necessary to discuss the probable effect that this fact may have upon petitioners' right to maintain this proceeding.

In Toner's Estate, 260 Pa. 49, the testator directed the maintenance of a school in Westmoreland County. The trustee sold coal, the removal of which allowed the surface of the farm upon which the school was located to fall in in a great number of places and to render the larger portion of the farm unfit for use and dangerous to life. This was a petition in the orphans' court to terminate the trust, which was dismissed. Judge Copeland, of the court below, said (p. 54):

" 'Can this trust, conceding mismanagement by the trustee . . ., fail so that the next of kin of the donor may distribute the trust funds among themselves? It is a cardinal maxim in the courts of chancery, upon this subject, that a trust will not fail for want of a [faithful] trustee'. . . . 'From these cases . . ., it is idle for the petitioners`. . . to suppose that they can come in and take the trust funds and property . . . and part them among themselves and other collateral heirs. We have not even reached the doctrine of cy pres, . . . because, as we understand it, that doctrine is only invoked when everything which is in direct line with the trust, and upon which it operates, has failed; and then the trust will be perpetuated for purposes as nearly like that intended by the donor as possible.' "

In dismissing the appeals, Mr. Justice Moschzisker, at page 58, says:

"It is to be borne in mind, however, that the proceedings under review were not brought for the purpose of removing a derelict trustee, but were instituted, by distant relations of the testator, in order to have the trust declared at an end, so that the fund involved might be distributed among themselves; which would mean the entire frustration of the donor's purpose to found a public charity, a result never permitted when the general intent of a benefactor can be approximately carried out: Kramph's Est., 228 Pa. 455, 463.

"We are by no means convinced the court below erred in its refusal to find that the object of the trust here under consideration had ceased, within the legal meaning of that term; but, were the fact otherwise, under our law, as already shown, the cy pres doctrine would be applied by the courts, so as to accomplish, as far as possible, the testator's general purpose. Therefore, whichever way the case is considered, the appellants have no legal standing to complain."

We are of the opinion that, under our interpretation and construction of the testator's will, it is not necessary that the cy pres doctrine be applied to support this trust. However, if we have erred in our interpretation and construction thereof, the cy pres doctrine serves to keep it from falling, or, as Mr. Justice Moschzisker has said, "whichever way the case is considered, the appellants [petitioners] have no legal standing to complain."

We therefore come to the following:

### Conclusions of law

1. The said trust is not inoperative.

2. Children are to be admitted to said home who reside within the territorial limits of the free mail delivery (not rural free delivery) served by the United States post offices situated in the Borough of Tyrone, Blair County, Pa., and in the Borough of Bellefonte, Centre County, Pa.

3. Such children shall be those children who have been deprived, by death or abandonment, of one or both parents.

4. Such children shall not be less than 5 years nor more than 12 years of age at the time of their admission to said home.

5. When such children reach the age of 12 years, the board of managers of the said home shall forthwith, in good faith and with reasonable diligence,

endeavor to procure a home for such child, such child to remain in the home, if desired, until such home can be found.

6. The petition should be dismissed at the cost of the petitioners.

We therefore enter the following

### Decree nisi

And now, August 29, 1934, the petition is dismissed at the cost of the petitioners.

### Final decree

And now, September 13, 1934, no exceptions having been filed to the decree nisi entered as of August 29, 1934, the said decree is hereby made absolute.

From Musser W. Gettig, Bellefonte, Pa.