Alumnæ Association of William Penn High School for Girls *v.* University of Pennsylvania, Appellant.

Argued January 13, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Henry S. Drinker, Jr.,* for appellant.

*William C. Ferguson, Jr.,* of *Slocum & Ferguson,* for appellee.

OPINION BY MR. CHIEF JUSTICE FRAZER, February 3, 1932:

This case came before the court below on petition for a declaratory judgment. Respondent appeals from the judgment against it. The facts are as follows:

The University of Pennsylvania holds an endowment from the Alumnæ Association of the William Penn High School for Girls (successor to the original donor), which was transferred to it among other endowments at the time the Medico-Chirurgical College and Hospital was merged with the University of Pennsylvania in 1916. The university now alleges that the terms of this endowment are unprofitable and seeks to return the fund in question to the associaton and to be relieved of obligation thereunder.

In 1909, the Alumnæ Association of the Commercial High School for Girls, petitioner's predecessor (then an unincorporated association, since incorporated), took up with the Medico-Chirurgical Hospital the question of providing, by endowment, for a bed in a private room in the hospital for the use of association members. The superintendent of the hospital replied: "......our institution will gladly accept the endowment of a private bed in a private room, by the Alumnæ Association.....; and will grant the privilege of allowing any one member of the association who may at any time require hospital treatment, the use of this bed with medical attendance and nursing. The hospital would be willing to receive one thousand dollars on account, the balance to be paid from time to time, as the association is able, until the amount of five thousand dollars is completed, your association to have the privilege of using the bed as soon as one thousand dollars is deposited. In the event of your deciding to endow a bed in this hospital, I think the board of trustees would contribute five hundred dollars towards the amount of the endowment, and would put a brass tablet on the door of the room stating that the bed is endowed by your association."

The first $1,000 was duly paid, and on December 5, 1911, the treasurer of the association, making a payment on the endowment, wrote the hospital as follows: "..... It is the understanding of the association that the balance of the fund, $2,400, is to be paid within a reason-

able time, and in the meantime the members of the association are to have the privilege of the endowment. It is also the association's understanding that this endowment gives to the members of the association, who present proper credentials from the Committee of the Association on the Endowed Bed, the right to the use of the bed in private room No. 304 free from all costs and charges for medical attention, including attending physicians and surgeons of your hospital, operations, use of the operating room, medicines, board, service of a nurse, and such other expenses as may be incidental to the patient's condition. The room is not to be used for confinement cases or such cases as by the rules of the hospital are excluded from admission. In cases where the endowed bed is being used by a member, and another member desires to enter the hospital at the same time, or in maternity cases, we understand special terms and rates will be made, to be agreed upon in each particular case. When the room is not occupied by a member of the association, the hospital shall have the right to its use for any other patient, provided that should it be desired by some member when so occupied, the hospital will furnish such member some other room equally as good." To this the treasurer of the hospital replied under date of April 22, 1912, saying that the letter of the association setting forth its understanding as to the terms of the endowment had been laid before the board of trustees and "the conditions therein are assented to" and the letter would be spread upon the minutes, in order that it might be a matter of hospital record, and adding that, "the promised contribution of $500 to the fund has been made by the hospital." The acceptance as above was reiterated in a formal receipt from the treasurer of the hospital to the Alumnæ Association, dated January 28, 1913, as being "in full settlement of the endowment, the terms and conditions of which are fully set forth in a letter of the association to the Medico-Chirurgical Hospital, dated the fifth day of Decem-

ber, 1911, and the minutes of the board of trustees of the said hospital relating thereto, together with their letter in reply to the letter of the association dated the fifth day of December, 1911."

When, in 1916, the Medico-Chirurgical College and Hospital was merged with the University of Pennsylvania, one of the articles of amalgamation recited that, "All assets, property and endowments held by the trustee of the Medico-Chirurgical College and Hospital corporations shall pass in absolute ownership to the corporation of the University of Pennsylvania......"

Appellant argues no express agreement exists to render or continue the stipulated services for any definite time; that the obligation to render the services was merely a condition, not a covenant, and that, while the hospital was obliged to render the services so long as it retained the endowment, it was free to determine the agreement at any time, return the endowment, and thus be relieved of its obligation.

The court below properly interpreted "the writings and actions of both parties to the endowment as having contemplated the continuation of hospital service during the entire existence of the respondent and its successors," in "absolute ownership." No other conclusion could reasonably be reached under the facts. Endowments are commonly regarded as "property or pecuniary means bestowed as a permanent fund,......the income of which is to be used in the administration of a proposed work": 20 C. J. 1255. The hospital accepted the fund "on the terms and conditions indicated" and in so doing agreed to carry out the provisions upon which it was given, without attaching reservations. Assuming that defendant hospital authorities were at liberty to reject the endowment at the time of the merger of the two hospitals, they did not do so, but, in terms not in the slightest degree doubtful, accepted the endowment and have for sixteen years continuously carried out the

terms of the contract without question. They cannot now be permitted to repudiate it.

We agree with the court below that, under the circumstances of this case, the acceptance of the endowment and of the terms under which it was given constitute a covenant for the duration of the existence of the donee hospital and its successors.

The judgment is affirmed.