## Lehigh University, Appellant, *v.* Hower.

Argued December 10, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*R. S. Taylor,* with him *Taylor, Taylor & Riskin,* for appellant.

*Adams Dodson,* with him *Thomas E. Butterfield, Jr.,* for appellee.

OPINION BY BALDRIGE, P. J., April 10, 1946:

The plaintiff, Lehigh University, brought this action in assumpsit to recover $700, the balance of the purchase price alleged to be due under an agreement of sale of a remainder interest in certain real estate, of which Albert Brodhead died seized, known as "Rossmore" situate in Ross Township, Monroe County. The appellee, Edward A. Hower, refused to accept the deed tendered, alleging it did not convey a good and marketable title. Plaintiff contends it has an indefeasible title in fee simple to the remainder following the admitted life estate in the property given the defendant. Defendant, on the other hand, claims plaintiff holds title to the remainder interest in this parcel as trustee under an active trust subject to certain executory devises and that it cannot sell the real estate without complying with the specific terms of the power of sale contained in testator's will.

The action proceeded as a case stated, wherein it was agreed that the court was to enter judgment for the defendant if it "shall be of the opinion that the will of Albert Brodhead is either a devise in trust, or a devise in fee, subject to valid conditions, limitations or devise over" but if the court concludes that the testator made an outright gift of the remainder interest in his estate to Lehigh University, and that the so-called conditions were invalid, then judgment to be entered for the plaintiff. The court held testator's will created an active charitable trust separate and distinct from a devise to Lehigh University for general charitable purposes and that the conditions attached thereto were valid; that application had to be made to the Orphans' Court to sell the lands. Judgment was entered for the defendant. The decree of the learned court below will be affirmed.

Albert Brodhead died testate on May 19, 1939. He was possessed of a large amount of personal property and of approximately 50 parcels of land, including the piece involved in this case. Most of his real estate was

located in Northampton County where he resided. The testator wrote his will and its construction gives rise to this litigation, not an unusual consequence when one unlearned in the law acts as a scrivener, especially when he attempts to create trusts to which are attached many conditions and limitations. The first of the several relevant portions of his long will reads as follows: "I bequeath all my property both real and personal or mixed, . . . to Lehigh University of Bethlehem, Pa., in Trust as herein set forth and upon the conditions following, viz: That no Mortgage or any other kind of obligation of any kind whatsoever, ever be allowed to be placed upon the property hereby demised." He then authorized the University, acting through its board of trustees, to collect all dividends, interests, rents, etc., to execute leases, gave orders as to the care that should be taken of his properties, including periodic inspections by a competent man, etc., and that $1500 be set aside annually for the upkeep of his home. "It, my residence, shall always be occupied by First; Head of the Electrical Department, (as that was my course at college.) Second, Vice President, of Lehigh University, then by any other as the Trustees of the University shall designate, but by no Fraternity or Organization."

The will continues: "My father accumulated considerable real estate and property, believing the same to be the most reliable character of investment and I do now earnestly recommend to the Trustees, and make it one of the conditions of this Will, That if the Trustees find it necessary to sell any of the real estate or personal property of which I may die seized and possessed of, they must sell it by private or public sale but first they shall apply to the Orphans' Court of Northampton County, Pennsylvania, for permission to sell, but such permission shall not be given to sell by said Court until said Trustees shall file a Bond in said Court, with satisfactory security to be approved by the Court. That the said Trustees will invest, after said sale or within six

months of said sale, the whole of the proceeds of such sale, in improvements or buildings on properties which are hereby demised."

Instructions are given that the defendant, Edward A. Hower, an old employe, be made "manager of the Estate" and the trustees are to have all the revenue from whatever sources, after taxes, repairs, renewals, and bequests are paid "to use for such purposes for the University as they desire." Following is a devise of "Rossmore" at Ross Common, Monroe County, to Edward A. Hower for his natural life, with "remainder in fee . . . to my Trustees for uses hereinbefore set forth."

After directions are given relative to certain life estates, the will continues with these important provisions: "The foregoing devises in trust to the Lehigh University are made upon conditions above set forth and upon the condition precedent that all the terms of said trust shall be accepted by action of the Board of Trustees of the University duly certified in writing to my Executors hereinafter named . . . Should Lehigh University cease to function as a University or cease to act as an Educational Institution or refuse to accept all the conditions in this said Will—Then all properties of whatsoever nature including Bonds and Stocks and Real Estate as set forth herein I bequeath all to 'THE CONGREGATION OF THE UNITED BRETHERN OF THE BOROUGH OF BETHLEHEM, PENNSYLVANIA and its VICINITY' provided they will accept all the provisions as set forth for Lehigh University if said Congregation exists. If it does not, then to the City of Bethlehem, the Mayor to appoint three Trustees besides himself one to be the President of the Bank with the largest surplus. The income to be applied to the Education of the children in the Public Schools of Bethlehem."

The Board of Trustees of Lehigh University on May 24, 1939, passed a resolution that they would "accept with gratitude this bequest to be known as 'The Lehigh

University Brodhead Fund' and will administer it in accordance with the conditions laid down in the will of Albert Brodhead."

A study of this will convinces us that it created an active charitable trust, subject to valid executory devises in favor of other charities. All the essential ingredients of a trust are present. The testator was the creator, the University acting through its trustees is a trustee, and those who enjoyed the educational privileges of that institution are primarily beneficiaries. That the testator intended to create an active trust is apparent. He expressly states that he is giving his property to the University in trust and attaches to the trusteeship many active duties. We concede the words "in trust" in themselves are not always controlling (*Reiff and Umstead's Appeal*, 60 Pa. 361; *Lawrence et al. v. Godfrey*, 296 Pa. 474, 146 A. 107), but they are entitled to great consideration, especially when, as here, there is much other evidence, which makes increasingly clear the testator's intention to create a trust. The active duties to be discharged by the trustees, the minute details given respecting the management of the estate, the occupancy of his residence, the limitations of the trustees' powers of reinvestment, the prohibiting the trustees from ever mortgaging or encumbering the property, the limitations over upon the refusal of the University to accept the conditions of the will or function as an educational institution, furnish cumulative proof that the University did not receive an absolute title in fee to this land subject only to a legal life estate. There is a marked distinction between a gift to a charitable corporation in fee for its general and corporate purposes and a gift to a charitable corporation as a trustee of a fund to be administered for specific purposes: *Hobbs et al. v. Board of Education of Northern Baptist Convention et al.*, (Neb.), 253 N. W., 627, 634; *Unruh's Estate*, 248 Pa. 185, 93 A. 1000.

The appellant argues that the instructions to pay annuities, taxes, insurance, for the inspection of the

property, etc., are covenants or obligations, not conditions attached to a gift, as there are no provisions for reversion for violation thereof, citing *Alumnae Assoc. of William Penn High School for Girls v. University of Pennsylvania,* 306 Pa. 283, 159 A. 449, and *Hopkins et al. v. Women's Medical College of Pa.,* 331 Pa. 42, 200 A. 32. Those cases involve the interpretation of contracts and are not controlling here. In the will before us, it is true that in the event of the breach of the conditions, the property does not revert to the testator's heirs, but as we have seen there are limitations over to other designated parties. Such limitations have been upheld by the courts where the intention of the testator is clear, as in the instant case: *Lennig's Estate,* 154 Pa. 209, 25 A. 1049. "If property is given upon trust to apply it to a charitable purpose and it is provided that if a certain event should happen or that if a certain state of affairs should cease to exist the trust should terminate, the charitable trust terminates upon the happening of the event or when the designated state of affairs ceases to exist. . . ." Restatement, Trusts, §401, Comment d., p. 1225.

"The event upon which the gift over is to take effect may be the failure of the first charitable trust, or the failure of one of the purposes of the charitable trust, or it may be an event unconnected with the administration of the trust . . . It is immaterial whether the first gift is in the form of a limitation or is subject to a condition subsequent:" Restatement, Trusts, §401, Comment f., p. 1227. See, also, *Lennig's Estate,* supra; *Levan's Estate,* 314 Pa. 274, 171 A. 617.

It is also clear that the testator in imposing limitations over upon prescribed conditions, which defeat the prior estate, created executory devises: *Cohn's Estate,* 324 Pa. 177, 180, 188 A. 144.

Restatement, Property, Vol. I, §25, defines an "Executory Limitation" as follows: ". . . the term 'executory limitation' denotes that part of the language of a conveyance, by virtue of which (a) the interest subject

thereto, upon the occurrence of a stated event is to be divested, before the normal expiration thereof, in favor of another interest in a person other than the conveyor or his successor in interest; or (b) an estate in fee simple determinable, or an analogous interest in a thing other than land, or an estate in fee simple conditional, concurrently with its expiration, is to be succeeded forthwith by another interest in a person other than the conveyor or his successor in interest."

Simes on Future Interests, (1936), Vol. I, p. 268, chapter 9, "Executory Interests", §149, states: "When the Statute of Uses turned these equitable interests into legal interests, for the first time it could be said that an estate of freehold to begin in the future was possible. These estates were of two sorts, shifting uses and springing uses . . . The Statute of Wills made it possible to create the same sort of interests by will. These, however, were classified under one designation and termed 'executory devises'. Eventually shifting uses, springing uses and executory devises all came to be called executory interests. The term 'conditional limitation' is sometimes applied to them, and has been used practically interchangeably with the terms 'executory interest' and 'executory limitation' ".

In 19 Am. Jur., p. 556, §96, an "executory devise" is defined as follows: "A general and comprehensive definition of an executory devise is a limitation by will of a future estate or interest in land which cannot, consistent with the rules of law, take effect as a remainder, or, as it is sometimes framed by the courts, such a limitation of a future estate or interest in lands as the law admits in the case of a will, although contrary to the rules of limitation in conveyances at common law." See, also, Butler's notes to Fearne's Essay on Remainders, (1845), p. 386, and Tiffany, Real Property, 3rd Ed., Vol. II, §377, pp. 135, 136.

The appellant contends also that the so-called conditions imposed are unreasonable and impracticable.

Even so the Orphans' Court under the Price Act, to which specific reference will be made shortly, is empowered to afford relief. If the trustee desires to sell this remainder interest, it can be done subject to the approval of the Orphans' Court by following an orderly and legal procedure. The acceptance of the trust by the University was a condition precedent, a prerequisite to the gift and trusteeship. The stipulations imposed upon the trust, to be performed after its acceptance, were valid, subsequent conditions to be executed by the trustees.

There remains for consideration whether it was the intention of the testator to give his trustees power to sell any of his real estate and if so what procedure was to be adopted to effectively exercise it. A trustee is limited to the authority granted in the instrument creating the trust or under the provisions of the Price Act of 1863, as revised by the Act of June 7, 1917, P. L. 388, 20 PS §§1561, 1566: *Nauman v. Weidman*, 182 Pa. 263, 37 A. 863; *Woodring v. Lesher et al.*, 147 Pa. Superior Ct. 340, 347, 24 A. 2d 42. The testator evidently did not intend to absolutely bar the trustees of the University from selling as he specifically provided that if they found it necessary to sell, either at private or public sale, any of his real or personal property "first they shall apply to the Orphans' Court of Northampton County, Pennsylvania, for permission to sell" and give a bond conditioned that they will invest the proceeds of the sale in a certain restricted manner. It could be plausibly argued that the testator had the right to name an individual or a court, as he did, to approve the sale as a prerequisite to its validity, and that therefore the Orphans' Court of Northampton County alone, regardless of where the land sought to be sold was situate, could have approved the sale.

There are some other factors, however, to be considered. The Revised Price Act of June 7, 1917, supra, §§1, 2(b), 20 PS §§1561-1564(b), has special application

where, as here, the real estate is devised by will upon an active trust subject to executory devises. Under its provisions applications to sell should be made in the Orphans' Court of the county where the land is located. The testator's purpose that an Orphans' Court should have jurisdiction is entirely consistent with that statute. We do not think he intended to supersede the jurisdiction vested by law in the Orphans' Court of the county where the land is situate, and tried to give the jurisdiction to the Orphans' Court of Northampton County.

It was held in *City of Philadelphia v. The Heirs of Stephen Girard*, 45 Pa. 9, 25: "In all gifts for charitable uses the law makes a very clear distinction between those parts of the writing conveying them, which declares the gift and its purposes, and those which direct the mode of its administration." The Orphans' Court, with its control and direction of trustees in the use and disposition of property belonging to corporate charities, exercises broad visitorial and supervisory powers of the Commonwealth and its jurisdiction is exclusive: *John C. Mercer Home v. Fisher*, 162 Pa. 239, 29 A. 733. A court may vary specific instructions given by a testator in his will in order to accomplish the ultimate end which he had in view, provided such a departure does not impair the interest of any beneficiary or violate the testator's primary purpose: *Kramph's Estate*, 228 Pa. 455, 77 A. 814; *Toner's Estate*, 260 Pa. 49, 54, 103 A. 541; *Myers et al. v. Crick*, 271 Pa. 399, 403, 114 A. 255; *Bailey's Estate*, 276 Pa. 147, 153, 119 A. 907; *Longbotham's Estate*, 346 Pa. 94, 29 A. 2d 481; Restatement, Trusts, §167.

We are convinced that the learned court below was entirely correct in entering judgment for the defendant in the case stated, as the plaintiff did not tender a deed that passed a clear and marketable title to the piece of land in question.

Judgment of the court below is affirmed.