## Drennen Estate

*Wendell E. Warner,* for accountant.

*John E. Graham,* auditor.

*William L. Hammond,* for alleged heir at law of Dr. Henry Newton Speer.

VAN RODEN, P. J., March 5, 1948.—Decedent died January 21, 1909, survived by his widow but by no issue. By his duly probated will he devised and bequeathed his entire residuary estate in trust for the benefit of his wife for life, and then disposed of the remainder in the following language:

"and after the death of my beloved wife, I give, devise and bequeath the sum of Five thousand dollars ($5000.) of said residuum to the Board of Ministerial Relief of the United Presbyterian Church of the United States absolutely, and the balance or remainder of said residuum after payment of said legacy of Five Thousand dollars, I give, and bequeath in the following shares to the following persons hereinbefore named: The lawful issue of any legatee who shall have died before the termination of my wife's life estate to take the share said legatee would have taken had he or she survived my said wife, to wit:

| | |
|---|---|
| To Sarah J. Craighead | two eighths thereof, |
| To Emeline Donaldson | two eighths thereof, |
| To Charles S. Darling | one eighth thereof. |
| To Sarah J. Elwood | one eighth thereof. |
| To Dr. Henry Newton Spear | one eighth thereof. |
| To Emma Drennen Miller | one eighth thereof." |

Decedent's widow, hereinafter referred to as the life tenant, died January 1, 1947, which event terminated the trust and matured the fund for distribution. The life tenant was predeceased by all the specifically named remaindermen. The variety of factual situations existing with respect to the issue of the respective deceased remaindermen has created several problems of considerable difficulty concerning distribution,

and the accountants have requested the court for a construction of decedent's will in connection therewith.

Inasmuch as the accountants were uncertain as to whether they had ascertained all persons having either vested or contingent interests in the remainder, the court appointed John E. Graham, Esq., as auditor to ascertain the identity of all parties entitled to participate in the distribution, and the amounts of their respective distributive shares. The auditor exhibited commendable diligence and thoroughness in the performance of his duties, and as a result of his careful investigation the identities of eight hitherto unknown parties in interest were ascertained. The report of the auditor shows exhaustive and careful legal research and keen analysis of the legal problems involved, and his recommendations as to distribution are approved by the court except as herein modified.

Due to the great variety of factual situations and the complexity of certain of the legal issues involved, it will help to simplify the approach to these problems if we consider separately the devolution of the share specifically bequeathed and devised to each of the six named remaindermen.

1. Emma Drennen Miller, testator's niece, who was given one eighth of the remainder, survived testator, but died in 1940, thereby predeceasing the life tenant. She was survived by three children, Paul S. Miller, Arthur Patterson Miller, and Harold Fulton Miller. The last named son subsequently died in 1943, likewise predeceasing the life tenant, survived by two children, Douglass Fulton Miller and Patricia D. Miller. Thus, at the date of death of the life tenant, the named legatee, Emma Drennen Miller, was not alive, but was survived by two children, and by two grandchildren who are the children of her deceased son. Since testator specifically provided in his will that "the lawful issue of any legatee who shall have died before the termination of my wife's life estate to take the share said

legatee would have taken had he or she survived my said wife", the only problem here concerned is whether "issue" shall be construed to mean only the two children of the named legatee who were alive at the death of the life tenant or shall also include the children of the deceased child of the said legatee.

The problem in this case is not whether testator intended "issue" to denote a word of limitation rather than one of purchase, since it seems fairly obvious from the context of the will that testator intended to create a substitutionary gift for the first taker's issue. Hence, it constitutes a word of purchase: Lippincott Estate, 349 Pa. 538 (1944). The question is whether "issue" was intended by testator to mean simply "children".

In Lockhart's Estate, 306 Pa. 364, 402 (1932), the Supreme Court rejected the argument that testator used the word "issue" to mean simply children and no descendants in remoter degree, and it was there held that "issue" means generally descendants ad infinitum. Similarly in Ashhurst's Estate, 133 Pa. Superior Ct. 526, 529 (1938), it was held that "issue" in a will means prima facie "heirs of the body" or lineal descendants irrespective of their being the same generation. (Cf. Riegler Estate, 356 Pa. 93 (1947), where conversely it was held that the word "children" was intended by testator to mean "issue".)

The court therefore holds that in the instant case testator intended that his substitutionary gifts to the issue of any specifically named remaindermen who predeceased the life tenant should be distributed per stirpes among such of the said legatees' descendants who survived the life tenant. Accordingly, the children of a deceased child of a named legatee will be included per stirpes in the award of the share to which such legatee would have been entitled had he or she survived the life tenant.

2. Emeline Donaldson, testator's sister, who was given two eighths of the remainder, survived testator,

but died in 1920, thereby predeceasing the life tenant. She was survived by four children: Mrs. Hannah Dickson, Mrs. Frances Emma Aiken, Thomas L. Donaldson, and John Donaldson. Thereafter, in 1925, the said Thomas L. Donaldson died leaving four children; John T. Donaldson, Thomas E. Donaldson, Mrs. R. A. Ullery, and Mrs. J. C. Fishwick, all of whom survived the life tenant. In 1932 John Donaldson died, leaving two children: Dr. John Donaldson, Jr., and Rodgers Donaldson, both of whom survived the life tenant.

The legal situation involved here is exactly the same as the one hereinbefore discussed. Accordingly, for the reasons set forth, the children of the two deceased children of the named remainderman will be included per stirpes in the award of the share to which such legatee would have been entitled had she survived the life tenant.

3. Charles S. Darling, testator's nephew, who was given one eighth of the remainder, survived testator, but died in 1937, thereby predeceasing the life tenant. At the time of his death he left three children: James Darling, John S. Darling, and Annabelle Darling Gabriel, all of whom survived the life tenant. Said legatee was survived also by four grandchildren, being the children of his son, Eugene Darling, who predeceased him in 1924. All four grandchildren, to wit, Charles William Darling, Paul Howard Darling, Robert Wayne Darling, and Hugh Burton Darling, survived the life tenant.

This situation differs from that of the two previously considered only in that the death of one of the children of the named legatee ocurred prior to the death of such legatee as well as prior to that of the life tenant. The court does not believe that this distinction creates any legal difference in result. Having reached the conclusion that testator intended the substitutionary gift to benefit all lineal descendants of a named legatee in the event of the death of such legatee prior to that of the

life tenant, it follows that such substitutionary gift was a class gift to such lineal descendants of the named legatee, and that the members of the class are to be determined as of the date appointed for distribution, to wit, the death of the life tenant. See Denlinger's Estate, 170 Pa. 104 (1895); Whitman's Estate, 329 Pa. 377, 382 (1938).

Accordingly, the award of the share to which Charles S. Darling would have been entitled had he survived the life tenant will be made in favor of all issue of the said legatee who were alive at the date of the death of the life tenant, per stirpes, regardless of the date of death of the immediate ancestor of any such issue.

4. Dr. Henry Newton Speer, testator's nephew, who was given one eighth of the remainder, survived testator but died in 1933 without issue, thereby predeceasing the life tenant.

Death of a named legatee without issue constitutes a situation which was probably not contemplated by testator and is certainly not covered by any express provision in the will. This gives rise to several possible results, depending upon the construction of the will to be adopted with respect thereto. There may be an intestacy as to this one-eighth share, in which event it would be distributed among testator's heirs at law; or, alternatively, the shares of the other named residuary legatees may be increased proportionately; or, again alternatively, this share may go to the named legatee's devisees or heirs at law, depending upon whether such legatee died testate or intestate.

With respect to a possible intestacy, we must start with the presumption that testator intended to dispose of his entire estate: Provident Trust Company of Philadelphia v. Scott et al., 335 Pa. 331 (1939). Partial intestacy will be avoided if possible: Rzedzianowski's Estate, 148 Pa. Superior Ct. 361 (1942). Accordingly, that construction of the will by which the whole of testator's estate is disposed of will be preferred over

one which leaves a part of the estate undisposed of. However, the preferred construction must be reasonable and consistent with the general scope and provisions of the will. See Conard Estate, 34 Del. Co. 297 (1947).

In a very recent case, Verner Estate, 358 Pa. 280 (1948), where a will provided for the termination of one fourth of a trust upon the death of each of four nephews with issue surviving, and one nephew died without leaving issue, it was held, in the absence of any provision in the will as to what happened in default of surviving issue, that there was an intestacy with respect thereto. That case, however, is clearly distinguishable from the instant case because there the named legatee, who died without issue, was specifically given only a life estate, whereas in the instant case Dr. Speer was given an interest in the remainder of testator's residuary estate. Thus, the question here is not, as in the Verner case, supra, whether the failure of issue increased the share given to the named legatee, but rather whether the failure of issue operated to reduce or destroy Dr. Speer's share. The instant case is therefore more analogous to the case of Rickenbach Estate, 348 Pa. 121 (1943), where there was a gift of a remainder interest to testatrix's two daughters followed by a provision that "the then living lawful issue of either daughter shall take their mother's share in the event of her death", but there was no provision for death without issue. It was held that one of the daughters, who died prior to the time appointed for distribution, had a vested interest.

The fact that testator manifested an intention to dispose of his entire residuary estate is a potent argument against intestacy as to any part thereof: Keen's Estate, 221 Pa. 201 (1908) ; Buechley's Estate, 283 Pa. 107 (1925).

In Verner Estate, supra, the Supreme Court held that the interpretation of a will is not to be controlled

by the mere mechanical application of such maxims, and that where a testator fails to make provision in his will for a contingency which happens, the court is without power to reform the instrument so as to supply the deficiency in accordance with what testator presumably would have provided had the possible event been called to his attention. In the instant case, however, from a study of the entire will, the court concludes that testator did in fact intend his residuary clause to dispose of his entire estate, and desired that the interests of the named residuary legatees be defeated only upon the expressly stipulated contingency, hereinafter more fully discussed. Accordingly, we find that there was no intestacy with regard to the share in question.

With respect to the possibility that the share in question should be considered as having fallen into the remainder of the residue by virtue of Dr. Speer's death without issue in the lifetime of the life tenant, thereby increasing proportionately the shares of the other specifically named residuary legatees, the court is of the opinion that the Act of June 4, 1879, P. L. 88 (since replaced by section 15(c) of the Wills Act of June 7, 1917, P. L. 403, 20 PS §253, in turn replaced by section 14(10) of the Wills Act of 1947) is not applicable to the instant case, since said Act of 1879 was restricted to devises of real estate and did not cover legacies and bequests of personal property. Furthermore, in the instant situation, the named legatee survived testator and there was therefore no lapse in the strict sense of that term with respect to the share in question. Statutory provisions as to lapsed legacies are applicable only where the beneficiary dies in the lifetime of testator: Rickenbach Estate, supra, at page 124. This is especially true in connection with the Act of 1879, which did not include the provision incorporated in the later Act of 1917 to cover devises or bequests "incapable of taking effect", but was by its terms applicable only

to situations where the devisee predeceased testator. Accordingly, there can be no doubt that upon the death of testator in the instant case, Dr. Speer as one of the named legatees acquired an interest of some nature with respect to one eighth of the remainder of the residue.

In order to determine the exact nature of the interest acquired by the named legatee upon the death of testator, it must first be decided whether such interest was contingent or vested; if vested, whether it was subject to be divested; and, if so, the condition of the divestment.

As between a vested or contingent interest, it is well settled that an interest is to be construed contingent only when it is impossible to construe it vested; that there is a presumption in favor of vesting; and that the absence of a gift over upon the decease of a legatee without leaving issue is an indication of vesting, especially if intestacy would otherwise result: Rickenbach Estate, supra, at page 128.

The fact that testator did not provide that legatee's enjoyment should commence immediately upon testator's death, but postponed such enjoyment until the death of the life tenant, does not render the interest contingent rather than vested, unless survival until the time of actual enjoyment is made a condition precedent: Overbrook Heights Building & Loan Assn. v. Wilson et al., 333 Pa. 449 (1939). Where a legacy is made payable at a future time certain to arrive, and not subject to condition precedent, it is vested, where there is a person in esse at the time of testator's death capable of taking when the time of payment arrives, although his interest is liable to be defeated altogether by his own death: McCauley's Estate, 257 Pa. 377 (1917).

It follows, therefore, that the interest of Dr. Speer, as one of the residuary legatees, was vested. The will of testator expressly provided, however, that if the

named legatee predeceased the life tenant, then the issue of such legatee is to take the share of the deceased legatee. Thus, the interest of the named legatee is expressly subject to divestment, but the condition of divestment is not merely the death of said legatee, but rather death leaving issue. (Whether such issue must actually survive the life tenant is considered elsewhere in this opinion; it is not relevant at this point inasmuch as Dr. Speer died without issue.)

The fact that testator made a gift over in the event of death of a named legatee with issue, but made no gift over in the event that the legatee died without issue, is an indication that testator intended the condition of divestment to be death with issue rather than merely death regardless of issue: Carstensen's Estate, 196 Pa. 325 (1900); Rickenbach Estate, supra.

In Carstensen's Estate, supra, testatrix bequeathed a remainder estate unto his "brothers and sisters, the child or children of any who may then be dead to take the parent's share." A brother died without issue. It was held that the interest of the brothers and sisters was not contingent upon their surviving the life tenant, but that it vested at the death of testatrix, subject to be defeated only by the death of the legatee leaving issue during the lifetime of the first taker, and that since such event had not occurred the remainder was not divested.

In the case of Rickenbach Estate, supra, testatrix devised her residuary real estate unto her trustees with direction to sell at their discretion and divide the proceeds between testatrix's two daughters, "provided, however, that the then living lawful issue of either daughter shall take their mother's share in the event of her death." One of the daughters died without issue after the death of testatrix but before the real estate was sold and the proceeds divided. It was held that the estates bequeathed to the daughters were vested, subject to be divested should either die leaving issue after

the death of testatrix but before the real estate was sold and the proceeds divided, and that inasmuch as one daughter died without issue her estate was not divested.

To understand more clearly the exact nature of the estate given in the instant case to each of the specifically named remaindermen, it may be helpful to consider the nature of the gift over in favor of the issue upon the happening of the stipulated condition of divestment of the estate of the named remaindermen. Where the preceding estate is a fee, a limitation over upon a prescribed condition which defeats the prior estate is an executory devise and not a remainder: Gohn's Estate, 324 Pa. 177 (1936) ; also see Lehigh University v. Hower, 159 Pa. Superior Ct. 84, 90 (1946), where it was held that testator in imposing limitations over upon prescribed conditions, which defeat the prior estate, created executory devises. Where the executory interest operates in defeasance of an interest created in a third person, rather than an interest left in the transferror, it is designated as a shifting executory interest rather than a springing executory interest. See A. L. I. Restatement of the Law of Propertry, §25, comment c.

In the instant case, therefore, the court is of the opinion that the proper classification of Dr. Speer's interest in the remainder of the residue was that of a vested remainder subject to a shifting executory devise in favor of his issue (see A. L. I. Restatement of the Law of Propery, §25, comment f) ; that such remainder was not vested absolutely but was subject to divestment or defeasance; and that the condition of such divestment or defeasance was the effectiveness of the attempted executory interest; and that the failure of issue rendered the executory interest ineffective, thereby resulting in the indefeasibility of Dr. Speer's vested remainder. See A. L. I. Restatement of the Law of Property, §229.

Accordingly, the court concludes that Dr. Speer's one-eighth share in the remainder of the residue did not lapse and was not defeated by reason of his death without issue in the lifetime of the life tenant, that there is no intestacy with respect to such share; that the other residuary legatees are not entitled to participate proportionately in such share, but that such share descends and passes to Dr. Speer's devisees or heirs at law, dependent upon whether he died testate or intestate; and since it does not appear of record whether he left a will, the award of this share will be made in favor of his personal representative.

5. Sarah J. Elwood, testator's niece, who was given one eighth of the remainder, survived testator but died in 1926, predeceasing the life tenant. She had three children: William Drennen Ellwood, who survived the life tenant; Charles Ellwood, who died in 1908, thereby predeceasing testator as well as the named legatee and the life tenant; and Margaret Ellwood, who died in 1944, surviving testator and the named legatee but predeceasing the life tenant. Both Charles and Margaret died without issue. The learned auditor recommended that the award of this one-eighth share be made in favor of the surviving child of Sarah J. Ellwood and the estates of her two deceased children in equal shares. With this recommendation the court does not agree. We think the learned auditor fell into error when he concluded that the children of the named legatee acquired vested remainders defeasible only by their own deaths with issue.

The children of the named legatee could acquire an interest in this remainder only in one of two ways—by the effectiveness of the shifting executory devise in favor of issue, or by inheritance from the named legatee. As hereinbefore indicated, the court is of the opinion that testator intended his reference to "issue" to mean issue in esse at the time appointed for distribution. Accordingly, a child of a deceased named legatee

who likewise predeceased the life tenant cannot meet the condition of the executory limitation, to wit, survival of both the named legatee and the life tenant. Therefore, the executory limitation is ineffective as to such issue, but this would not of itself prevent such issue from inheriting the parent's interest, which possibility must now be considered.

As heretofore stated, the named legatee was given a vested remainder subject to divestment. When such legatee died in the lifetime of the life tenant her interest passed to her heirs at law. It seems very clear that her son who predeceased her without issue was not one of her heirs; therefore, neither he nor his estate could acquire anything by reason of her death. The named legatee's defeasible vested interest descended upon her death unto her two living children, who took subject to the same condition of divestment, namely, surivival of issue of the named legatee (rather than survival of their own issue as concluded by the auditor). Therefore, when William Drennen Ellwood, son of the deceased legatee, survived the life tenant, the condition of the executory limitation was fulfilled, and the effectiveness thereof divested completely the interest of the named legatee, and consequently divested the interests which her children had acquired by inheritance from her. Hence, the estate of her son, who predeceased the named legatee, and of her daughter, who survived her but predeceased the life tenant, are not entitled to share in her one-eighth interest, which will be awarded in toto unto her sole issue surviving as of the date of death of the life tenant.

Although this result seems contrary to the language of some of the reported cases, they may be reconciled upon their facts. Thus, in Carstensen's Estate, supra, where decedent's will created a life estate for the benefit of her husband with remainder to her brothers and sisters and provided that "the child or children of any of my said brothers or sisters who may then be dead

to take and receive the share that his or their parent would have taken if living", and one of the brothers died in the lifetime of the life tenant leaving a son who died without issue in the lifetime of the life tenant, the court held that the interest was payable to the son's legal representative. Since said son was his father's only child, he acquired upon his father's death the latter's defeasible vested interest, which was rendered indefeasible by his own death without issue, which event precluded any of his father's issue from taking under the executory limitation. This differs from the instant case in that the deceased child of the named legatee was not an only child. Accordingly, his death without issue did not mean the failure of all issue of his parent, and the effectiveness of the executory limitation was not impaired.

McCauley's Estate, supra, must also be here considered. The opinion in that case is somewhat unsatisfactory in that the writer (Mr. Justice Stewart) confusingly referred to Anna Jane White (the named legatee) as testator's niece, whereas it appears that she was in fact his sister, and also refers to the death of Rebecca W. Love (daughter of said Anna Jane White) as having occurred prior to the death of her mother, whereas she in fact survived her mother but predeceased the life tenant. A study of that case reveals the correct fact to be as follows: Testator bequeathed a life interest in his estate to his widow and directed that upon her death the balance should be converted into money and divided into three equal parts. He bequeathed one of such third parts to his sister "if living or her children, if she be then deceased, in equal parts or shares, and to the issue of such of them as may then be deceased, such issue taking, however, such part or share as his, her, or their parent or parents would have taken if living." The sister died during the lifetime of the widow leaving two children, one of whom predeceased the life tenant without leaving issue. It was

held that the personal representative of the deceased child was entitled to participate in the distribution. This case is distinguishable from the instant case in that the gift to the named remainderman (testator's sister) was contingent upon her surviving the life tenant. Accordingly, her interest, not being vested, could not descend to her children. They acquired no interest by inheritance from her, but acquired their interest directly from testator's substitutionary gift in their favor. Such interest was vested as of the date of their mother's death, subject to be divested only upon death without issue. It is clear that testator's reference to issue referred to issue of the said children rather than to issue of the first named remainderman. Accordingly, death of one child without issue rendered ineffective the executory limitation in favor of such issue, and the remainder was therefore indefeasible. Accordingly, the award to the deceased child's personal representative was proper. In the instant case, however, testator used the word "issue" to refer to the issue of the named remaindermen rather than the issue of their children; consequently, as long as any issue of the named remaindermen survived the life tenant there was no bar to the effectiveness of the executory limitation, and when such executory interest became effective the prior estate was completely divested.

The award of Sarah Jane Ellwood's one-eighth share will therefore be made in favor of her sole surviving issue, to wit, William Drennen Ellwood.

6. Sarah J. Craighead, testator's sister, who was given two eights of the residue, predeceased him in 1908. She was survived by six children, namely, William Craighead, Joseph Craighead, Matthew Craighead, Donald Craighead, Samuel Craighead, and Annie Craighead, and by a grandson, namely, Charles A. Craighead (child of her predeceased son, Charles Craighead), all of whom survived testator. The first question to be considered with respect to this two-

eighths share is whether the gift lapsed by reason of the death of the named legatee in the lifetime of testator. Inasmuch as the said legatee was a sister of the testator and was survived by issue, whereas testator did not leave lineal descendants who would receive the benefit of any lapsed legacy, the legacy to the sister was saved from lapse by the Act of July 12, 1897, P. L. 256, sec. 1, which was in force at the time of the death of the testator (since replaced by the Wills Act of June 7, 1917, P. L. 403, sec. 15(b), 20 PS §252, in turn replaced by section 14(8) of the Wills Act of 1947). Accordingly, the legacy or devise in favor of the sister is available in favor of her surviving issue.

The learned auditor was of the opinion that Sarah J. Craighead had a vested interest in her share of the remainder. It would seem obvious, however, that since the interest did not vest until the death of testator, and since she predeceased him, it could not have vested in her. An essential condition of vesting is that the taker must be in esse at the time of the vesting. It would, therefore, be more accurate to say that the share which testator intended her to receive vested at the time of his death in her children and the issue of her deceased child. It is important to note that such children and grandchild did not take the share by inheritance from Sarah J. Craighead but took directly from testator, their substitution having been effected by the statute. Accordingly, her said six children and the child of her predeceased son, who survived testator, each derived from testator's will, by operation of the statute, a vested remainder in one twenty-eighth of the residue, similar in nature to the interests of the specifically named legatees and subject to divestment only upon the same condition, to wit, death prior to that of the life tenant with issue surviving the life tenant.

One of said Sarah J. Craighead's sons, Matthew D. Craighead, survived the life tenant. His interest was

never divested, and is therefore now indefeasible, and he is entitled to an award in his favor.

Two of Sarah's sons, Joseph Craighead who died in 1912, and William Craighead who died in 1920, were not survived by issue. For the reasons hereinbefore stated with respect to Dr. Speer's share, their interests were rendered indefeasible by death without issue, and their personal representatives are entitled to awards of their respective shares.

Similarly, Charles A. Craighead, grandson of Sarah J. Craighead (being the son of Charles Craighead who predeceased his mother, the said Sarah J. Craighead), survived testator but died without issue in the lifetime of the life tenant, and for the reasons hereinbefore stated, the personal representative of the said Charles A. Craighead, deceased, is entitled to an award of his one twenty-eighth share.

Donald Craighead, another of Sarah's sons, died in 1942, survived by three children, namely, Mrs. Helen Warker, Ruth A. Craighead, and Grace C. Killgore, all of whom survived the life tenant. The executory limitation in their favor thus became effective, and an award of Donald's share will be made in favor of said three children.

Samuel Craighead, another of Sarah's sons, died in 1911, survived by six children, five of whom survived the life tenant, and one of whom died in 1946 predeceasing the life tenant, leaving two children who survived the life tenant. For the reasons hereinbefore stated in the discussion of the share bequeathed to Emma Drennen Miller, an award will be made in favor of all issue of Samuel Craighead who survived the life tenant, per stirpes.

Annie Craighead, daughter of Sarah, died in 1918, survived by two sons: Willard Boyd, also known as Willard Craighead, and Howard A. Horner. The former died in 1946, survived by two sons, namely Willard M. Craighead and Richard D. Craighead, both

of whom, as well as the said Howard A. Horner, survived the life tenant. Accordingly, the award of Annie's share will be made in favor of her issue per stirpes.

The complete award is set forth in the adjudication filed contemporaneously herewith, and will therefore not be repeated here.