## Spoerl Estate

*Morris H. Goldman, Francis M. Richards, Jr.,* and *Rodney T. Bonsall,* for accountants.

*Erich O. Angermann, Frank O. Schilpp, F. Raymond Heuges, Thomas S. Weary, G. Harry Ditter, Albert C. Weymann, Jr., Minturn T. Wright, 3rd,* and *Anthony H. Whitaker,* for legatees.

SHOYER, J., October 3, 1955.—. . . The first question raised at the audit relates to those bequests which by the terms of paragraph fifth of the will are to be paid to the endowment fund of each legatee, the income to be used for the purposes of the endowment

fund and not diverted to other purposes. Paragraph fifth begins as follows:

"FIFTH: Believing that bequests to charities should be made in such manner that the principal of said bequest should remain always intact and that the charities should benefit by the *income* therefrom, I give and bequeath to the charitable institutions hereinafter named in this paragraph the legacies respectively indicated, with the provision that unless otherwise specifically stated such legacies shall be paid to the Endowment Fund of each legatee, and the *income* therefrom used for the purposes of said Endowment Fund and not diverted to other purposes:" (Emphasis supplied.)

It is contended by some of the recipients that legacies as above described are "pecuniary legacies bequeathed in trust" which under section 753(a) of the Fiduciaries Act of April 18, 1949, P. L. 512, bear interest at the rate of 3% per annum from the date of death of testator.

Article VII of the Fiduciaries Act of 1949 is headed "Accounting and Distribution In Decedents' Estates" and is subdivided into "A. Accounts", "B. Audits", "C. Review", "D. Distribution" and "E. Rights of Distributees". Under this last heading follow general rules as to the Order of Abatement in the event of insufficiency of assets, Contribution, and then section 753, "Interest or income on distributive shares",

"(a) Pecuniary legacy. A pecuniary legacy bequeathed in trust shall bear interest at the rate of three per centum per annum from the death of the decedent until the payment of the legacy, and when not in trust shall bear interest at the rate of three per centum per annum from one year after the death of the decedent until the payment of the legacy." . . .

"(d) Residuary legacy or devise. All income from real and personal estate earned during the period of administration and not payable to others shall be dis-

tributed pro rata among the income beneficiaries of any trust created out of the residuary estate and the other persons entitled to the residuary estate." . . .

"(g) Testamentary provisions. All rules set forth in this section are subject to the provisions of the decedent's will."

To section 753(a) the following comment of the Joint State Government Commission is appended:

"Subsec. (a). This preserves the distinction between legacies in trust and those given outright. While the language of section 21 of the 1917 act was probably intended to eliminate any distinction, it probably exists even after the 1939 amendment: cf. Bands Est., 157 A. 511, 103 Pa. Super. 553."

It is apparent that the legislature in sections 751 et seq., sought to cover the field by furnishing a complete set of rules for distribution in all cases subject, of course, to such provisions as decedent himself might make in his will. Counsel while arguing before the auditing judge conceded that this was the legislative intent but at the same time doubted that the legislature had this particular case in mind when drafting section 753(a).

While the rules as enacted appear rigid and unyielding, both the Commission in recommending, and the General Assembly in legislating, were utilizing the experience gained under section 21 of the 1917 act as amended, and were furnishing an equitable solution, based on that past experience, of future distribution problems as they might arise.

The Commission in its comment, having made reference solely to the case of Band Estate, 103 Pa. Superior Ct. 553, which dealt with the right of an individual life tenant to income, which had accrued during administration, in a trust created solely for individuals, the legislature must have been thinking of those cases

where income will cease with death of the life tenant and not be perpetual as in the case of a charity.

This being so, the auditing judge believes that the phrase "bequeathed in trust" must be restricted to those cases where the trust is specific, i.e., either it is created by the will, or else the recipients of the bequest have the well defined and clearly established status of trustees. Such is not the case of the ordinary gift to charity because "Where property is given to a charitable corporation, a charitable trust is not created, even though by the terms of the gift the corporation is directed to hold the principal forever and to devote the income only to the accomplishment of the purposes of the corporation, and even though by the terms of the gift the corporation is directed to use the property only for a particular one of its purposes. Thus, if a gift of property is made to an incorporated educational institution with a direction to invest the principal and use the income in paying the salary of a professor of mathematics, a charitable trust is not created, but the institution is the owner of the property, though it holds it for this particular charitable purpose." A. L. I. Restatement of the Law of Trusts, Ch. 11, Introductory Note to Charitable trusts, p. 1093.

The auditing judge believes that the legislature here used trust "in the technical sense of that word as it is used between individuals:" Craig Estate, 356 Pa. 564, 567, and did not mean to include those cases where by virtue of its charter the charity holds property as "trustee for itself".

True it is that our appellate courts have ruled that in the exercise of the Commonwealth's broad visitorial and supervisory powers over corporate charities, the Orphans' Court has exclusive jurisdiction: Glatfelter Trust Deed Case, 372 Pa. 502; Craig Estate, supra; John C. Mercer Home, etc., v. Fisher, 162 Pa. 239; Lehigh University v. Hower, 159 Pa. Superior Ct. 84;

nevertheless, as pointed out by the Restatement, *ibid.*, p. 1094, the administration of a charitable trust is governed by the trust instrument and may be enforced in equity by anyone to whom a liability has been incurred in the administration of the trust, whereas the Attorney General will enforce the administration of a charitable corporation according to its charter, and proceedings to reach the property of the corporation can be brought at law.

Any other construction of section 753(a) would mean that in will after will where legacies have been made to a church or other charity, to be added to its endowment fund, three percent interest from testator's death should be added. Legacies similar to the gift in this will of $750 to Mt. Vernon Cemetery for perpetual care of testator's cemetery lot would bear interest from testator's death, even though such legacies were paid early in the administration of estates and prior to accounting. The practice followed for many years, both before enactment of the Fiduciaries Act of 1949 and since, would be overthrown. This, in the opinion of the auditing judge, was not the intention of the legislature.

Careful examination of this whole will, however, does give evidence of testator's intent as to the disposition of income. The three residuary legatees are all corporate charities, and their gifts in paragraph Sixth are expressly "to the Endowment Funds, on the same terms as hereinabove specified under Paragraph Fifth hereof".

Testator was well aware that the "principal portion" of his estate (see paragraph Seventh) was going to charities. When administration was accomplished, distribution was to be in full and complete. Having directed these legatees were not to touch principal, but merely to benefit from the use of income, testator undoubtedly wished them to receive income at the earliest

opportunity. That distribution, and hence the earning of income on their gifts, should be delayed during administration is inevitable, but that he wished the three residuary legatees to benefit by this delay to the exclusion of the pecuniary legatees does not appear. The auditing judge will ascribe to testator the equitable intention of desiring that the legatees in paragraph Fifth (except those in sub-paragraphs 14 and 35) should share proportionately this surplus income with the three residuary legatees in paragraph Sixth. "It is well settled, . . . 'The law will impute to a testator's words such a meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice.' " Spangenberg Estate, 359 Pa. 353, 356.

The auditing judge is supported in this ruling by the decision of our Superior Court in Band Estate, supra, p. 557: "We repeat, the testator had in mind income actually received by the estate whether interest or dividends or any other source, and that each cestui trust was to get his or her proportionate share from the time of his death. This was his evident intention and such disposal of the income is fair to all parties interested."

To the legacies in paragraph Fourth, and to the legacies of sub-paragraphs 14 and 35 in paragraph Fifth, should be added 3% interest from February 3, 1955 (one year from date of decedent's death), unless distribution was made prior thereto.

.    .    .

One other gift remains to be discussed, and that is the bequest contained in sub-paragraph 16 of paragraph Fifth, giving $5,000 to the Lankenau Hospital "for the purpose of a free bed to be known as 'The Harry Spoerl and Tillie G. Spoerl Memorial Bed' ". While testator in stating this gift removed it from the

endowment provisions which he attached to most of the bequests contained in paragraph Fifth, it is customary for hospitals to accept such bequests solely on an endowment basis. As the annual income from $5,000 is insufficient of itself to establish a free bed for the whole year, this beneficiary has accepted the bequest with the understanding that this sum will go into its endowment fund for free beds (see letter of counsel attached hereto). Although mingled with other funds it should retain its identity as coming from this particular benefactor. Under these circumstances the auditing judge believes that the bequest should share in the income along with the other beneficiaries who are receiving their gifts as part of their respective endowment funds.

And now, October 3, 1955, the account is confirmed nisi.